OPINION
{¶ 1} Defendant-appellant, Kevin Brown, appeals from a Mahoning County Common Pleas Court judgment convicting him of four counts of rape following a jury trial.
 {¶ 2} A Grand Jury indicted appellant on July 12, 2001, on four counts of rape in violation of R.C. 2907.02(A)(1)(b)(B). Specifically, appellant was accused of raping his six-year-old grand niece.
 {¶ 3} The court originally set a trial date of September 26, 2001. This trial date was delayed by multiple continuances and motion hearings requested by the defense, the State, and the trial court. As a result, appellant filed a motion to dismiss on speedy trial grounds, which the court overruled.
 {¶ 4} The continuances and motion hearings in this case combined to produce an 18-month delay between appellant's arrest and the start of his trial. As a result, appellant's case first came to trial on January 21, 2003. At this time, a jury was selected, impaneled, and sworn. At the parties' joint request, the court declared a mistrial on January 23, 2003.
 {¶ 5} The trial was then reset for February 10, 2003. Appellant was tried and convicted on all counts. Thereafter, appellant filed a Crim.R. 29 motion to dismiss, which the trial court overruled. On February 24, 2003, the trial court sentenced appellant to four consecutive life sentences. Appellant thereafter filed his timely notice of appeal.
 {¶ 6} Appellant raises four assignments of error on appeal, the first of which states:
 {¶ 7} "Trial court erred in requiring the defendant to proceed to trial when the defendant had been continuously incarcerated for 583 days and R.C. Section 2945.71 required that defendant be tried within 90 days of his arrest on felony charges while being held without bond."
 {¶ 8} First, appellant contends that the record indicates that he was being held without bail solely as a result of his arrest for rape. Hence, he asserts that because he was being detained only for the rape charges, he was entitled to the triple-count provision of R.C. 2945.71(E). Accordingly, since he was arrested on July 6, 2001, the 90-day statutory time period would have run on October 4, 2001.
 {¶ 9} Appellant claims that, despite the application of lawful tolling periods, he was not brought to trial within his speedy trial time limit. Appellant also urges that significant periods of time were considered tolled and counted against his speedy trial time as a result of prosecutorial misconduct. Therefore, appellant concludes, many of the specific tolled periods were excessive and inherently unfair.
 {¶ 10} In response, appellee first claims that appellant was held in custody as a result of post-release control (PRC) violations, and not for the rape charges. Appellee contends that on July 6, 2001, the Adult Parole Authority placed a hold on appellant because, (1) he was residing in a location other than where he was supposed to be residing, and (2) appellant was associating with a known or convicted felon. Because appellant was in custody due to PRC violations, appellee claims that he is not entitled to the R.C. 2945.71(E) triple-count provision. Therefore, appellee maintains, appellant's speedy trial time limit was 270 days. Appellee further contends that appellant's "try-by" date was effectively extended by lawful tolling periods. Hence, it concludes that it brought appellant to trial within the 270 days.
 {¶ 11} The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." This right was made applicable to the States by the Fourteenth Amendment. Article I, Section 10 of the Ohio Constitution also guarantees an accused the right to a speedy trial.
 {¶ 12} Every person who is charged with an offense for which he may be deprived of his liberty or property is entitled to this fundamental right of a speedy trial. State v. Dunlap, 7th Dist. No. 01-CA-124, 2002-Ohio-3178, at ¶ 10. This is so because the right to speedy trial "`is premised upon the reality that fundamental unfairness is likely in overlong prosecutions.'" State v. Anderson, 7th Dist. No. 02-CO-30, 2003-Ohio-2557, at ¶ 13, quoting Dickey v. Florida (1970), 398 U.S. 30,54, 90 S.Ct. 1564, 26 L.Ed.2d 26.
 {¶ 13} Pursuant to R.C. 2945.71(C)(2), the State must bring a person charged with a felony to trial within 270 days after his arrest. If the accused is held in jail in lieu of bail on the pending charge, then each day he is held in jail counts as three days. R.C. 2945.71(E). This is known as the "triple-count" provision. It requires the State to bring the accused to trial within 90 days after his arrest.
 {¶ 14} The time for speedy trial begins to run when an accused is arrested; however, the actual day of the arrest is not counted. State v.Szorady, 9th Dist. No. 02-CA-008159, 2003-Ohio-2716, at ¶ 12. Both parties agree that appellant was arrested on July 6, 2001. Thus, appellant's speedy trial clock began running on July 7, 2001. Appellant's trial began on February 10, 2003. Thus, it took 584 days for appellee to try appellant.
 {¶ 15} Appellant contends that he was held in jail solely on the rape charges, whereas appellee asserts that appellant was being held on a parole holder also. Thus, we must next determine whether appellant was entitled to R.C. 2945.71(E)'s triplecount provision. The triple-count provision only applies to those defendants held in jail in lieu of bail solely on those pending charges. State v. Dunkins (1983),10 Ohio App.3d 72, 74-75, 460 N.E.2d 688. The triple-count provision does not apply when a defendant is held on a parole holder also. Statev. Cook (1992), 65 Ohio St.3d 516, 518, 605 N.E.2d 70. So if appellant was being held solely on the rape charges, his speedy trial time was 90 days. If he was also being held on a parole holder, his speedy trial time was 270 days.
 {¶ 16} We must construe Ohio's speedy trial statute strictly against the State. State v. Singer (1977), 50 Ohio St.2d 103, 105, 362 N.E.2d 1216. Once the defendant alleges that he is being held in jail solely on the pending charge and then demonstrates that the State has not brought him to trial within the limits set by the triple-count provision, he has made a prima facie case for discharge. State v. Butcher (1986), 27 Ohio St.3d 28,31, 500 N.E.2d 1368. At this point, the burden shifts to the State to produce evidence demonstrating that the defendant was not entitled to be brought to trial within the triple-count limits. Id.
 {¶ 17} On August 7, 2002, appellant filed a motion to dismiss on speedy trial grounds. He alleged several reasons why his speedy trial rights were violated. Among these reasons, appellant alleged that he was entitled to the triple-count provision of R.C. 2945.71 because he was arrested and held in jail solely on the rape charges. Appellant argued that the State had not established that he was being held on a PRC holder.
 {¶ 18} Appellant had also argued at a June 5, 2002 hearing, when he was being represented by other defense counsel, that his speedy trial rights were violated. In a June 7, 2002 judgment entry, the trial court noted that appellant's speedy trial time had not expired and that 110 days remained to try him.
 {¶ 19} The court held a hearing on appellant's motion to dismiss. Because appellant's previous counsel had argued at the June 5 hearing that the 90-day limit should apply, this time appellant's counsel focused on other alleged speedy trial violations. However, he did argue again that the 90-day limit should apply. Appellant's counsel argued that the State had not produced "one iota" of evidence other than its own statements that appellant was arrested because of a PRC violation. The prosecutor stated that appellant was arrested on July 6 "by his parole officer, not on the action or any action based on this case." (Aug. 19, 2002, Tr. 12). She noted that the State did not file an indictment until July 13.[1] Therefore, she argued that appellant's speedy trial time began to run the day the indictment was filed and that since he was also on a parole holder, his speedy trial time was 270 days.
 {¶ 20} The trial court overruled appellant's motion in its September 16, 2002 judgment entry, applying the 270-day limit without discussing whether the 90-day limit should apply.
 {¶ 21} As noted above, once appellant alleged that he was being held in jail solely on the rape charges and then demonstrated that the State had not brought him to trial within the limits set by the triple-count provision, he made a prima facie case for discharge. The burden then shifted to the State to show that appellant's speedy trial rights were not violated.
 {¶ 22} Appellee argues that the record provided evidence that appellant was being held on a parole holder for a PRC violation. It points to several things for support.
 {¶ 23} First, it points to the June 5 continuance hearing at page 2. However, this transcript is not properly in the record. The only copy is attached to appellant's August 7 motion to dismiss. Thus, we will not consider this transcript because it is not properly in the record. However, even if it was properly a part of the record, the only "evidence" that appellant was being held on a PRC violation was the prosecutor's statement that that was the case, which is not evidence at all.
 {¶ 24} Second, appellee points to the August 19 hearing on appellant's motion to dismiss at pages 12-14. There, the prosecutor stated that appellant was arrested on July 6, 2001 by his parole officer, "not on the action or any action based on this case." (Aug, 19, 2002, Tr. 12). She stated that on that date, there were two allegations against appellant, (1) that he was not residing in the place where he was supposed to be residing and (2) that he was associating with a known felon, both in violation of his post-release control. (Aug, 19, 2002, Tr. 12-13). The prosecutor argued that rape charges were not brought against appellant until he was indicted approximately a week later. She also stated that the Adult Parole Authority had put a hold on appellant. (Aug, 19, 2002, Tr. 14). Here, the only "evidence" that appellant was being held on a PRC violation was the prosecutor's statements. No evidence was offered to substantiate the prosecutor's statements.
 {¶ 25} However, the Ohio Supreme Court has held:
 {¶ 26} "When a defendant makes no request to the trial court to state findings of fact in support of an order overruling a motion to dismiss on speedy trial grounds, and the trial court does not state its findings of fact, an appellate court errs in reversing a conviction on the ground that the defendant was denied a speedy trial if there is sufficient evidence demonstrating that the trial court's decision was legally justified and supported by the record." State v. Brown (1992),64 Ohio St.3d 476, at the syllabus, 597 N.E.2d 97.
 {¶ 27} In Brown, the court of appeals reversed Brown's conviction after finding that he had been denied his right to a speedy trial. It found that there was nothing in the record verifying the existence of a parole holder, other than references to the parole holder by the prosecutor and defense counsel. Furthermore, it noted that the trial judge did not acknowledge that a parole holder was produced for his inspection.
 {¶ 28} The Ohio Supreme Court reversed. It found that the transcripts of the hearing on the motion to dismiss and pretrial conference provided a sufficient basis to conclude that there was a valid parole holder on Brown. Id. at 480. The Court noted that at the hearing on the motion to dismiss, Brown's counsel acknowledged that Brown was being held on the pending charges and a parole holder. Id.
 {¶ 29} The Court also addressed Brown's argument that, in the absence of an express finding of fact that a parole holder had been issued, no basis existed for the court's denial of his motion to dismiss. It pointed out that Brown did not request findings of fact from the trial court regarding its decision on the motion to dismiss. Id. at 481. It opined that a trial court's failure to place of record the findings of fact essential to its disposition of a motion will not provide a basis for reversal on appeal in the absence of a timely request for such findings. Id.
 {¶ 30} In this case, like Brown, defense counsel acknowledged at the hearing on the motion to dismiss that appellant was being held on both the pending charges and a parole holder. At the motion hearing, defense counsel specifically stated:
 {¶ 31} "On July 6th Mr. Brown was arrested. Mr. Brown would testify to the fact that he was arrested due to this charge. There may be other charges involved but due to this charge. He was also told by his PO that he would —
 {¶ 32} "* * *
 {¶ 33} "He was also told by his PO that if this doesn't go forward, I'll kick you loose; it's not sufficient to go forward on a parole violation. I don't know that for sure. I'm taking it on the word of my client, which I have to do. That's my job." (Aug. 19, 2002, Tr. 32).
 {¶ 34} Additionally, defense counsel stated during his speedy trial argument:
 {¶ 35} "It's the Court's job to make sure that when the State of Ohio doesn't get things done in time, that the case is over. They have requirements. The requirements are do it in 270 days." (Aug. 19, 2002, Tr. 29-30).
 {¶ 36} In these statements, appellant's counsel acknowledged that appellant was being held on a parole holder in addition to the pending charges. Evidence of a valid parole holder can be adduced from the transcripts of the trial court hearing. See State v. Adkins (Apr. 3, 1997), 8th Dist. No. 70326; State v. Ballow (July 3, 1996), 9th Dist. No. 2527-M. Appellant apparently told his attorney that he was in contact with his parole officer and that the parole officer told him that if he was not convicted of the rape charges, he would drop the parole violation. Furthermore, counsel acknowledged at one point that the State had a duty to try appellant within 270 days. This too was an acknowledgement of the parole holder because appellant's speedy trial time would only be 270 days if he was being held on the rape charges and a parole holder. See State v. Olverson, 10th Dist. No. 02AP-554, 2003-Ohio-1274, at ¶ 34.
 {¶ 37} Moreover, in this case as in Brown, appellant did not request findings of fact from the trial court. The court issued a judgment denying appellant's motion to dismiss. The court applied the 270-day limit without addressing why the triple-count provision did not apply.
 {¶ 38} Thus, because the record supports the trial court's decision, appellant was not entitled to R.C. 2945.71's triple-count provision as he was not being held solely on the pending charge.[2] Accordingly, appellee was required to bring appellant to trial within 270 days of his arrest.
 {¶ 39} Considering any lawful tolling periods, we must next determine whether appellee brought appellant to trial before his speedy trial time expired.
 {¶ 40} As stated above, appellant's speedy trial time began to run on July 7, 2001. Appellant filed a discovery motion on July 19. Pursuant to R.C. 2945.72(E), requests for discovery toll the running of the speedy trial clock. State v. Brown, 98 Ohio St.3d 121, 2002-Ohio-7040, at ¶26. Appellant argues that since Brown, was decided after his motion for discovery was filed, its holding does not apply to him. Until Brown, the Ohio Supreme Court had not ruled on the issue of whether a motion for discovery or a bill of particulars constituted tolling events. However, this court, as well as other appellate courts, have applied Brown's
tolling rule to requests for discovery and bills of particulars that were filed before Brown's holding. See State v. Turner, 7th Dist. No. 93-CA-91, 2004-Ohio-1545; State v. Brummett, 4th Dist. No. 03CA5, 2004-Ohio-431; City of Cleveland v. Sheldon, 8th Dist. No. 82319, 2003-Ohio-6331. Therefore, appellant's speedy trial time ran from July 7 through July 19 (12 days).
 {¶ 41} Appellee responded to appellant's requests on October 17. However, appellant's counsel filed a motion for a continuance on September 13. The trial court rescheduled appellant's trial for October 17. The period of any continuance granted on the accused's own motion, tolls the speedy trial time. R.C. 2945.72(H). Thus, appellant's speedy trial time was tolled during this time.
 {¶ 42} Appellant's counsel filed another motion for a continuance on October 17. The trial court granted the motion and set the trial for November 28. Thus, the speedy trial time continued to toll.
 {¶ 43} On November 28, the trial court sua sponte continued the trial, as it was engaged in another trial. R.C. 2945.72(H) allows for the tolling of an accused's speedy trial time upon the issuance of a sua sponte continuance by the trial court as long as the continuance is reasonable. State v. Barker, 6th Dist. No. L-01-1290, 2003-Ohio-5417, at ¶ 18. Thus, the speedy trial time continued to toll.
 {¶ 44} On December 5, the parties made a joint motion to continue. The court reset the trial date for December 12. Joint motions for continuance toll an appellant's speedy trial time. State v. Davis (Jun. 30, 1999), 7th Dist. No. 98-CA-97. So the speedy trial clock kept tolling.
 {¶ 45} On December 12, the court sua sponte continued the trial as it was engaged in another trial. By judgment entry dated December 13, a pre-trial date was set for December 27. But no trial date was set at that time.
 {¶ 46} Hence, appellant's speedy trial time began to run again on December 27, the day of the pre-trial conference, since no other continuances were in effect then. The next item to appear in the record is dated February 27, 2002. At this point, appellant's speedy trial time was at 74 days. The February 27 filing is a motion to continue by appellee on the ground that its DNA tests were not yet complete.
 {¶ 47} Appellant takes issue with the excessive amount of time it took appellee to get the results of the DNA test. Appellee asked for a continuance to complete the DNA testing on February 27, 2002. However, it did not send the DNA samples to BCI until April 9. (Def. Exh. 2). Thus, appellee waited over a month to send the DNA samples for testing. In an attempt to speed up the DNA testing, appellee then sent the DNA samples to Orchid Cellmark, a private lab. A report from Orchid Cellmark indicates that appellee did not send the samples until August 21. (Def. Exh. 1). Thus, it took appellee approximately six months from the time it requested the continuance to send the DNA samples to the lab where they were ultimately tested.
 {¶ 48} Appellant argues that this duration of time was unwarranted and unreasonable. He also alleges that appellee made several misrepresentations to the trial court regarding how long the DNA testing would take. He concedes that some of this time should be tolled against his speedy trial time. However, he argues that six months was unreasonable.
 {¶ 49} A continuance for testing that may exculpate a defendant, such as DNA testing, is reasonable, even when not on the defendant's own motion. State v. High (2001), 143 Ohio App.3d 232, 243,757 N.E.2d 1176.
 {¶ 50} We agree that some time should have been tolled to allow appellee to complete the DNA testing. However, the over one-month delay in sending the sample to BCI was unreasonable. In its motion to continue, appellee represented to the court that it had requested a "rush" on the DNA testing. Therefore, appellee should have sent the DNA sample out within days of filing its motion. Instead, appellee waited 41 days before sending the sample to BCI. Such a delay was unreasonable. Therefore, those 41 days should be counted against appellant's speedy trial time bringing his total to 115 days.
 {¶ 51} A reasonable amount of time should be tolled in order for appellee to complete the DNA testing. Therefore, a tolling period began once appellee sent the DNA samples to BCI on April 9. Apparently, there was a considerable backlog at BCI and when appellee realized how long a wait it had to get the testing done, it sent the DNA samples to Orchid Cellmark on August 21. Orchid Cellmark gave appellee the DNA results on September 3.
 {¶ 52} Additionally, during the DNA tolling period, on July 8, 2002, appellant's counsel withdrew with leave of court. The court appointed appellant new counsel the same day. It also set appellant's trial date for August 5. But that same day, appellant's new counsel filed motions for discovery and a bill of particulars. These motions would have also tolled appellant's speedy trial time. And on August 5, the parties made a joint request for a continuance. The court granted their request and set the trial for August 19, thus tolling the time through August 19.
 {¶ 53} Instead of proceeding to trial on August 19, the court held a hearing on appellant's motion to dismiss on speedy trial grounds. The court overruled the motion and set appellant's trial for October 30.
 {¶ 54} As noted above, the DNA tolling period ended on September 3, 2002. The next event to stop the speedy trial clock from tolling occurred on October 15, when appellant filed a notice of appeal from the trial court's judgment on his motion to dismiss. This court dismissed appellant's appeal for lack of a final appealable order on November 7. The filing of a notice of appeal by the accused stops the speedy trial clock from running. R.C. 2945.72(E). Thus, appellant's speedy trial time was tolled beginning on October 15.
 {¶ 55} From September 4 until October 15, 41 days expired. Adding these 41 days to the 115 appellant had already accumulated, brought appellant's total number of speedy trial days to 156.
 {¶ 56} Once this court dismissed appellant's appeal, his speedy trial clock began to run again, starting on November 8. The court set appellant's trial for November 18. On November 18, appellant filed a motion to continue because his expert witness was unavailable until January 6, 2003. Thus, the trial court reset the trial for that date. As it was appellant who requested the continuance, his speedy trial clock started tolling again from November 18. However, the ten days from November 8 to November 18 counted towards his speedy trial time, thus bringing his total speedy trial time to 166 days.
 {¶ 57} On January 6, 2003, appellant again requested a continuance because his expert was unavailable. So the court continued the trial until January 13. The trial did not begin that day, though there is no indication of a continuance on the record. The trial court did hold a hearing that day to determine a witness's competency. Therefore, the time from January 13, until the trial began on January 21, counted towards appellant's speedy trial time bringing his total to 175 days.
 {¶ 58} The trial began on January 21. The jury was impaneled the next day. However, the court declared a mistrial on January 23. It did so because appellee sought to amend a date in the indictment. Appellee waited until trial to amend the indictment even though appellant had previously filed a notice of alibi concerning the date in the original indictment. Once appellee amended the indictment, appellant could no longer present his alibi as planned. Thus, the court had to declare a mistrial.
 {¶ 59} Because, appellee waited to amend the date in the indictment until the trial had already began, and because it had notice of appellant's alibi beforehand, the time between the mistrial and the new trial should be counted against appellant's speedy trial time. Appellant's speedy trial clock once again began to run after the mistrial. It stopped on February 10, 2003, when his trial began. At this time, 193 days had accumulated on his speedy trial clock.
 {¶ 60} Thus, appellant was brought to trial within the 270-day speedy trial limit. Accordingly, appellant's first assignment of error is without merit.
 {¶ 61} Appellant's second assignment of error states:
 {¶ 62} "Trial court erred in overruling defendant's motion to dismiss on the basis that jeopardy had attached at the January 21, 2003 trial when the court declared a mistrial and that the state of ohio was barred from prosecuting the defendant a second time."
 {¶ 63} On January 23, 2003, the trial court declared a mistrial. In its judgment entry, the court reasoned that appellant was sufficiently prejudiced by appellee's amendment of the indictment and the absence of a bill of particulars. Specifically, appellant's notice of alibi, which established a defense regarding the original date in the indictment on counts one and two was rendered ineffective upon appellee's amendment, which changed the date of the alleged offenses in counts one and two.
 {¶ 64} Appellant argues that the court should have dismissed the charges against him because, at the time of the mistrial, jeopardy had already attached. He further contends that the attachment of jeopardy should have barred any further prosecution. Appellant notes that the trial court's judgment entry only states that "sufficient prejudice" would result if the trial proceeded. He contends that this language was not sufficient to allow further prosecution.
 {¶ 65} Furthermore, appellant argues that because appellee failed to provide him with a bill of particulars before the case proceeded to trial, he was ready to proceed with his alibi as a defense for the date stated in the indictment. Thus, he contends that because appellee failed to notify him of the changed date until trial had begun, it must take responsibility for the mistrial.
 {¶ 66} Next, appellant contends that the State, not he, requested the mistrial. Appellant also indicates that, prior to the motion for mistrial, the trial court denied a joint request of the parties to proceed the same day on counts three and four of the indictment. Therefore, appellant concludes, the trial court had other options than to declare a mistrial.
 {¶ 67} Generally, when a trial court grants a criminal defendant's request for a mistrial, the Double Jeopardy Clause does not bar retrial.State v. Loza (1994), 71 Ohio St.3d 61, 70, 641 N.E.2d 1082, citingOregon v. Kennedy (1982), 456 U.S. 667, 673, 102 S.Ct. 2083, 72 L.Ed.2d 416. There is a narrow exception to this rule where "the request for a mistrial is precipitated by prosecutorial misconduct that was intentionally calculated to cause or invite a mistrial." Id. The defendant may only raise the bar of double jeopardy to a second trial after requesting a mistrial when the prosecutorial conduct in question is intended to "goad" the defendant into moving for a mistrial. Id.
 {¶ 68} If a mistrial has been declared without the defendant's request or consent, double jeopardy will not bar a retrial if either there was a manifest necessity or high degree of necessity for ordering a mistrial, or the ends of public justice would otherwise be defeated. State v.Morgan (1998), 129 Ohio App.3d 838, 841-42, 719 N.E.2d 102, citingArizona v. Washington (1978), 434 U.S. 497, 505-506, 98 S.Ct. 824,54 L.Ed.2d 717.
 {¶ 69} Appellee contends that both parties in this dispute agreed to a mistrial. Appellee notes that appellant's trial counsel stated, "I think that the only proper thing to do is to declare a mistrial at this time," unless appellee dismissed counts one and two of the indictment and the case proceeded to trial on the other counts. (Supp. Tr. 397). Appellee urges that, because it was well within the law in obtaining an amendment, it refused to dismiss the first two counts. (Supp. Tr. 398). Appellee then notes that it agreed with appellant that "the most appropriate remedy and the remedy to protect the Defendant's right in this matter would be, of course, to declare a mistrial." (Supp. Tr. 398).
 {¶ 70} Crim.R. 7(D) allows the trial court to grant a motion to amend an indictment at anytime before, during, or after the trial in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, as long as no change is made in the name or identity of the crime charged. Thus, appellee's amendment of the indictment was permissible.
 {¶ 71} With the lawful amendment to the indictment, which changed the date of the offense by two days, appellant's alibi became useless. Appellant's counsel, at this point, conceded he would either have to amend the notice of alibi, or withdraw it and pursue a different defense. (Supp. Tr. 397). Based on the choices that appellant was left with, a mistrial was the least restrictive option available to the trial court.
 {¶ 72} Furthermore, it is not entirely clear from the record which party requested the mistrial. Appellee was the first party to suggest a mistrial. (Supp. Tr. 392). Later in the record, however, appellant agrees that declaring a mistrial would properly remedy the situation. (Supp. Tr. 397).
 {¶ 73} Regardless of which party requested the mistrial, in either scenario, retrial is not barred. If appellant requested the mistrial, retrial is not barred because there is no evidence that appellee goaded appellant into a mistrial. Conversely, if appellee requested the mistrial, retrial is not barred because, as appellant stated, he would either have to amend his alibi or pursue a different defense. In this case, there was a manifest or a high degree of necessity in declaring the mistrial, as appellant's alibi defense became essentially ineffective. Without the mistrial the ends of public justice would otherwise be defeated. Therefore, a retrial was not barred.
 {¶ 74} Accordingly, appellant's second assignment of error is without merit.
 {¶ 75} Appellant's third assignment of error states:
 {¶ 76} "Trial court erred in overruling defendant's criminal rule 29 motion to dismiss on grounds venue was not proved in counts I and II, Bill of particulars was insufficient, and defendant's exhibits 2 and 3 were excluded as relevant evidence."
 {¶ 77} The denial of a motion to dismiss is reviewed for abuse of discretion. State v. Adamson (1998), 83 Ohio St.3d 248, 250,699 N.E.2d 478. Thus, we will not reverse the trial court's decision absent an abuse of discretion. Abuse of discretion requires more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Clark (1994),71 Ohio St.3d 466, 470, 644 N.E.2d 331.
 {¶ 78} Appellant first argues that appellee did not establish venue in counts one and two. Appellant contends that there were no witnesses to the conduct alleged in the first two counts of the indictment other than the victim herself, who testified that the alleged acts occurred in appellant's vehicle after he pulled into some trees. (Tr. 700-01). Further, appellant notes that the area where he picked the victim up in his car is within minutes of the Trumbull County line and the State line of Pennsylvania. Therefore, appellant concludes, appellee cannot simply imply that the conduct occurred in Mahoning County.
 {¶ 79} In reviewing whether the state has proved venue beyond a reasonable doubt, appellate courts should apply the sufficiency of the evidence standard of review. State v. Penton (Apr. 7, 1993), 3d Dist. No. 9-91-25. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Statev. Smith (1997), 80 Ohio St.3d 89, 113, 684 N.E.2d 668.
 {¶ 80} Venue is not a material element of the offense charged, but is a fact that the State must prove in criminal prosecutions unless it is waived by the defendant. State v. Headley (1983), 6 Ohio St.3d 475, 477,453 N.E.2d 716. The State need not prove venue in express terms so long as it is established by all the facts and circumstances in the case. Id.
 {¶ 81} The facts and circumstances in this case established venue. The victim testified that she was in appellant's car and he "pulled into some trees." (Tr. 700). Her testimony indicated that the area of trees where the conduct occurred was very close to appellant's home. (Tr. 701-702). Kim Huey, the victim's mother, testified that appellant lived on Market Street. (Tr. 632). The victim testified that, upon pulling out of the trees, she could see her mother. (Tr. 701). Her mother was at appellant's home at the time. (Tr. 632, 635-36). Additionally, the victim testified that, after seeing her mother, appellant pulled up, and that she got out of appellant's car and into her mother's car. (Tr. 701-02). Furthermore, Officer John Aeppli testified that he went to arrest appellant at 2536 Market Street. (Tr. 874). Officer Aeppli works street duty in Youngstown. (Tr. 872-73).
 {¶ 82} Viewing this evidence in a light most favorable to appellee, venue was established. The testimony indicated the following. The victim could see her mother when appellant pulled out of the tree area where the crime occurred. Her mother was at appellant's house. Appellant lived on Market Street. Officer Aeppli works the street duty in Youngstown. He was called to arrest appellant at his address on Market Street. Given these facts and circumstances, the jurors could infer that the crime occurred in Mahoning County, Youngstown, Ohio. Thus, the trial court did not abuse its discretion in denying appellant's motion to dismiss for failure to establish venue.
 {¶ 83} Secondly, appellant contends that the bill of particulars provided was insufficient. Appellant notes that Crim.R. 7(E) states that upon timely request or court order, "the prosecuting attorney shall furnish the defendant with a bill of particulars setting up specifically the nature of the offense charged and of the conduct of the defendant alleged to constitute the offense." Appellant states that he requested the bill of particulars on July 8, 2002.
 {¶ 84} The trial court ordered appellee to provide this information on July 16, 2002. After appellee failed to comply, appellant filed a motion to compel and a motion for sanctions. Again, the trial court ordered appellee to provide discovery, including a bill of particulars, on August 15, 2002. However, appellee again failed to comply.
 {¶ 85} Appellant alleges that he was prejudiced by appellee's conduct, because the lack of the bill of particulars hindered his attempts to prepare a defense, especially his alibi. Moreover, appellant urges, once appellee finally provided the bill of particulars on January 24, 2003, after the mistrial, it was no different in form or substance than the indictment. Specifically, appellant claims that appellee did not state whether the alleged conduct occurred in the day or night, or what the exact nature of the alleged conduct was, i.e., vaginal, anal, or oral sexual conduct.
 {¶ 86} A bill of particulars is meant to particularize the conduct of the accused alleged to constitute the charged offense. State v. Sellards
(1985), 17 Ohio St.3d 169, 171, 478 N.E.2d 781. "A bill of particulars is not designed to provide the accused with specifications of evidence or to serve as a substitute for discovery." Id.
 {¶ 87} In the case at bar, the bill of particulars sets out the dates of the alleged offenses, the general nature of the alleged conduct, and the applicable statute. Therefore, the bill of particulars provided was sufficient to fulfill its intended purpose.
 {¶ 88} Furthermore, while we do not condone appellee's conduct in delaying to provide appellant with a bill of particulars, appellant was not prejudiced as a result. Mahoning County has a somewhat unique policy of "open discovery" in the prosecutor's office. Therefore, all of the State's evidence was available for appellant and his counsel to examine in preparation for trial. This would include police reports and witness statements. Because of the open discovery, appellant would have been able to determine what time of day the alleged crimes occurred and what type of sexual conduct was alleged as long as the State had this information. Thus, we cannot conclude that the trial court abused its discretion in denying appellant's motion to dismiss based on issues involving the bill of particulars.
 {¶ 89} Thirdly, appellant contends that the trial court erred in excluding defense exhibits two and three because both were relevant and admissible. Defendant's Exhibit 2 was a BCI evidence submission sheet that listed the items received from the Youngstown Police Department, including a pubic hair from the victim's rape kit. Defendant's Exhibit 3 was a BCI laboratory report that identified the hair in the rape kit as a pubic hair and found that trace taping from the victim's clothing did not reveal anything relevant.
 {¶ 90} Appellant submits that these exhibits provided evidence of an unknown pubic hair found in the rape kit. However, appellant argues that the characterization of the hair changed when it was sent to Orchid Cellmark, as that report merely referred to it as an "unknown hair." (Defendant's Exh. 1). Appellant contends that he wanted to show the jury that the "unknown hair" was, in fact, an "unknown pubic hair" from the rape kit that did not match his own. Therefore, appellant concludes, the trial court abused its discretion by excluding these two exhibits.
 {¶ 91} The admission or exclusion of evidence is within the trial court's discretion. State v. Sage (1987), 31 Ohio St.3d 173, 180,510 N.E.2d 343.
 {¶ 92} In the case at bar, appellee stipulated to the results of the Orchid Cellmark report, specifically that the hair found in the rape kit did not belong to appellant. (Tr. 963-64; Defendant's Exh. 1). Aside from this, appellant's only argument to the court in support of admitting exhibits two and three had to do with chain of custody of the evidence, not with how the hair was classified. (Tr. 960-970). And as appellee notes, it had already stipulated to the chain of custody. (Tr. 960). Therefore, exhibits two and three did not provide any relevant evidence not already contained in exhibit one, and stipulated to by appellee. Hence, we cannot conclude that the trial court abused its discretion in denying appellant's motion to dismiss based on this evidentiary issue.
 {¶ 93} Accordingly, appellant's third assignment of error is without merit.
 {¶ 94} Appellant's fourth assignment of error states:
 {¶ 95} "The cumulative effect of errors at the trial court level deprived appellant of a fair trial."
 {¶ 96} Appellant contends that the cumulative effect of the errors denied him a fair trial.
 {¶ 97} Pursuant to the doctrine of cumulative error, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." State v. Garner (1995),74 Ohio St.3d 49, 64, 656 N.E.2d 623. However, this doctrine is not applicable to a case where the court fails to find multiple instances of harmless error. Id.
 {¶ 98} Since we did not find multiple instances of harmless error in appellant's trial, the doctrine is not applicable here. Accordingly, appellant's fourth assignment of error is without merit.
 {¶ 99} For the reasons stated above, the trial court's judgment is hereby affirmed.
Vukovich, J., concurs in judgment only.
DeGenaro, J., concurs.
[1] The prosecutor made a mistake as to the date of the indictment. Appellee and appellant both state, and the record reflects, that appellant was indicted on July 12, 2001.
[2] We must note, however, that the better practice would have been to introduce some evidence of appellant's parole holder. The Ohio Supreme Court has noted that court records, journal entries, or jail records are but some of the ways the State can place evidence in the record to support its position that the defendant was not confined in jail solely on the pending charge. Butcher, 27 Ohio St.3d at 30, fn.4. Furthermore, appellee could have presented witnesses to testify that appellant was on a parole holder, such as someone from the Adult Parole Authority or the arresting officer.