[Cite as *State v. Poppelriter*, 2015-Ohio-4822.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO. 14 MA 170 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| RICHARD POPPELRITER, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:  Criminal Appeal from Mahoning County
Court #4, Austintown, Ohio.
Case No. 14CRB120

JUDGMENT:  Affirmed.

APPEARANCES:

For Plaintiff-Appellee:  Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Assistant Prosecuting Attorney
21 West Boardman St., 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant:  Atty.John A. Ams
134 Westchester Drive
Youngstown, Ohio 44515

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated: November 17, 2015

ROBB, J.

{¶1} Defendant-Appellant Richard R. Poppelriter appeals from his conviction of aggravated menacing entered by a jury in Mahoning County Court Number Four. Appellant first argues the state failed to prove venue as there was no direct testimony on the county and state. He then alleges his conviction was against the manifest weight of the evidence. He claims the weight of the evidence did not support a finding that he acted knowingly because there was evidence he experienced a mental episode. For the following reasons, Appellant's conviction is affirmed.

STATEMENT OF THE CASE

{¶2} Appellant was charged with two counts of aggravated menacing and one count of inducing panic, all first degree misdemeanors. A jury convicted him of aggravated menacing as to a dispatcher who Appellant directly threatened ("Dispatcher 1"). The jury could not reach a verdict on the aggravated menacing count which involved the other dispatcher ("Dispatcher 2"). Appellant was acquitted of inducing panic.

{¶3} At trial, the dispatchers testified that they work at the Austintown Township Police Department as civilian dispatchers. They are not law enforcement officers and do not carry firearms. (Tr. 104-105). They handle police, fire, emergency, 911, and regular calls. They work in a secured room behind a glass partition that separates them from the public lobby.

{¶4} On February 5, 2014 at 8:00 p.m., Appellant entered the public lobby of the station. The two dispatchers were the only people in the station. Dispatcher 1 spoke to Appellant as Dispatcher 2 took phone calls. Appellant expressed a belief that his friend had been arrested and was being held at the station. (Tr. 79). Dispatcher 1 informed Appellant that no arrests had occurred that night. (Tr. 80-81). She testified that Appellant "then proceeded to tell me that I needed to change my sweat jacket to white or I was going to die." (Tr. 81).

{¶5} Appellant asked again if his friend was at the station. When Dispatcher 1 reiterated that he was not there, Appellant asked for a Sergeant Brown. She advised him that no Sergeant Brown worked there. Appellant became "irate" and pounded on the glass window separating him from the dispatcher. He threatened

that he was "going to put his car through the building." (Tr. 81). Dispatcher 2 did not hear Appellant's words but saw him beating on the glass and described him as irate, crazy, and mad. (Tr. 108, 113-114).

{¶6} Appellant then exited the lobby. Dispatcher 1 called the lieutenant on road patrol duty, who instructed all units to respond. (Tr. 126). She also explained the situation to Dispatcher 2, who put two non-emergency calls on hold. (Tr. 108, 112, 117). Using the video surveillance system, the dispatchers watched Appellant as he ran around the building trying to open at least three locked exterior doors to the police station. (Tr. 81-83, 109-110). Appellant then ran to his vehicle. (Tr. 83).

{¶7} Dispatcher 1 waited for Appellant to put his car through the building. (Tr. 81). She believed Appellant was going to cause her serious physical harm. (Tr. 84-85, 87). Dispatcher 2 also testified that she believed Appellant was going to back his car through the lobby door and cause her physical harm. (Tr. 111).

{¶8} Officers soon converged on the scene. Appellant was asked to alight from his vehicle. He was agitated and upset. He yelled that they were holding his friend. (Tr. 135). He also claimed to be the "Antichrist." (Tr. 135). He calmed down and became "a little more lucid." (Tr. 136). The lieutenant called an ambulance and completed a "pink slip" so Appellant would be evaluated at the hospital as a danger to himself or others. (Tr. 129).

{¶9} After accepting the jury's guilty verdict for one count of aggravated menacing, the court proceeded to sentencing. In an October 30, 2014 judgment entry, the court sentenced Appellant to 180 days in jail with 90 days suspended and credit for 22 days of time served. He was placed on community control for 24 months and ordered to maintain his current mental health treatment. He was also fined $250, plus costs.

{¶10} On December 9, 2014, Appellant filed an untimely notice of appeal, a motion for leave to file a delayed appeal, and a request for a stay pending appeal. This court granted leave to file a delayed appeal and stayed Appellant's sentence, with conditions.

ASSIGNMENT OF ERROR NUMBER ONE

{¶11} Appellant's first assignment of error contends:

"THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR ACQUITTAL WHERE THE STATE FAILED TO PROVE VENUE BEYOND A REASONABLE DOUBT."

{¶12} "In any trial, in any court, the party accused shall be allowed * * * a speedy trial by an impartial jury of the county in which the offense is alleged to have been committed * * *." Ohio Constitution, Article 1, Section 10. Pursuant to R.C. 2901.12(A): "The trial of a criminal case in this state shall be held in a court * * * in the territory of which the offense or any element of the offense was committed."

{¶13} Appellant argues that venue was not sufficiently established because the prosecution failed to present direct evidence on the county and the state in which the incident occurred. Appellant recognizes that courts have found venue sufficiently demonstrated where a county is not specified. He claims, however, that the lack of direct evidence on the state in addition to the lack of direct evidence on the county is a distinct situation. He urges that testimony stating he was from Warren, Ohio did not establish the offense took place in Ohio.

{¶14} The state posits that we are reviewing only for plain error based on the belief that Appellant did not raise venue below. As venue is not a material element of the offense, it can be waived in the trial court by failing to object. *State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, ¶ 142-143 (and any review is only for plain error). However, in presenting a Crim.R. 29 motion for acquittal to the trial court, defense counsel specifically argued that the state failed to prove "the fact that these offenses occurred in Mahoning County, state of Ohio." The trial court overruled the argument, stating that Dispatcher 1 testified to venue. (Tr. 152). Therefore, the state's argument on waiver is without merit.

{¶15} The state also argues that circumstantial evidence established venue was proper in an Ohio court located in Mahoning County. Although venue is not a material element of the case, it is a fact that must be proven beyond a reasonable doubt. *Jackson*, 141 Ohio St.3d 171 at ¶ 143 (unless it has been waived). As the state emphasizes, venue need not be established by direct evidence in express terms. *See Id.* at ¶ 144. Rather, it can be demonstrated by the totality of the facts and circumstances of the case. *Id.*

{¶16} "In the prosecution of a criminal case, it is not essential that the venue of the crime be proven in express terms, provided it be established by all the facts and circumstances in the case, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the indictment." *State v. Dickerson*, 77 Ohio St. 34, 82 N.E. 969 (1907), syllabus. In the *Dickerson* case, there was testimony as to the township and county but not as to the state. *Id.* at 56. The Supreme Court criticized "the lax method of establishing venue" but found venue sufficiently established. *Id.*

{¶17} This court has found sufficient evidence of venue in cases where the county and state were not specifically named. *See, e.g., State v. Brown*, 7th Dist. No. 03MA32, 2005-Ohio-2939; *State v. Combs*, 7th Dist. No. 97JE65 (Nov. 15, 1999); *State v. Shuttlesworth*, 104 Ohio App.3d 281, 286-287, 661 N.E2d 817 (7th Dist.1995). In *Shuttlesworth*, venue in Harrison County was found proper where there was testimony as to the parking lot of a named business on a certain street, an officer on duty for Cadiz responded, and the location was said to be near the Cadiz Fire Department. *Shuttlesworth*, 104 Ohio App.3d at 286-287.

{¶18} In *Combs*, we found sufficient evidence of venue in Jefferson County where an address in Steubenville was provided but there was no evidence as to the county or state. *Combs*, 7th Dist. No. 97JE65. In our *Brown* case, we found sufficient circumstantial evidence of venue in Mahoning County where testimony showed the offense took place in trees that could be seen from the defendant's house on Market Street and where Youngstown police went to defendant's house to arrest him. *Brown*, 7th Dist. No. 03MA32 at ¶ 79.

{¶19} The Ninth District found sufficient evidence of venue in Summit County where street names were provided and the officer was patrolling the streets of Akron at the time, even though there was no testimony as to the county or state. *State v. Smallwood*, 9th Dist. No. 24282, 2009-Ohio-1987, ¶ 5-6. The Eighth District found sufficient evidence of venue in Cuyahoga County where a street address was provided and the East Cleveland and Cleveland Police Departments were involved in the case, even though there was no testimony as to county or state. *State v. Davis*, 8th Dist. No. 84610, 2005-Ohio-289, ¶ 13 (reasoning it cannot be argued that East

Cleveland and Cleveland are not located within Cuyahoga County). *See also State v. Carter*, 2d Dist. No. 85-CA-66 (Oct. 10, 1986) (overruling an argument that venue was lacking because the state failed to present evidence that the Village of Yellow Springs was in Greene County, Ohio).

**{¶20}** Here, there was no direct testimony that the incident occurred in Mahoning County, Ohio. However, the responding supervising officer was a lieutenant for the Austintown Township Police Department. (Tr. 120-121). At least two other Austintown Township police officers responded to the scene as well. (Tr. 126-127). Not only did Austintown Township police officers respond to the scene of the incident, but the incident took place at the Austintown Township police station. (Tr. 75-76, 102).

**{¶21}** The victim was a dispatcher for the Austintown Township Police Department working at the police station when the offense occurred. There was testimony that the police station was located off Ohltown Road next to the Austintown Township Administration Building, where the township trustees have their office. (Tr. 76, 102, 122). Testimony established that if the Austintown Township Police Department's telephone lines were down, any 911 call would be switched to Boardman. (Tr. 116).

**{¶22}** We view the venue-related evidence in the light most favorable to the state. *See State v. Price*, 7th Dist. No. 14MA28, 2015-Ohio-1199, ¶ 35, citing *Brown*, 7th Dist. No. 03MA32 at ¶79. Under the totality of the facts and circumstances of this case, there was sufficient circumstantial evidence to establish the offense occurred in Mahoning County, Ohio. This assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NUMBER TWO</u>

**{¶23}** Appellant's second assignment of error contends:

"APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶24}** Weight of the evidence deals with the inclination of the greater amount of credible evidence to support one side of the issue over the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In reviewing a manifest weight of the evidence argument, the reviewing court examines the entire record,

weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*

**{¶25}** A reversal on weight of the evidence is ordered only in exceptional circumstances. *Id.* In conducting our review, we proceed under the theory that when there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is generally not our province to choose one over the other. *See State v. McCrary*, 7th Dist. No. 12MA135, 2014-Ohio-1468, ¶ 73. Rather, we defer to the fact-finder who is best able to weigh the evidence and judge the credibility of witnesses first-hand. *Id.* If there are two reasonable views, it is difficult to conclude that the jury clearly lost its way and created a manifest miscarriage of justice and that the evidence weighs "heavily" against the conviction. *Id.* at ¶ 74. *See also State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, ¶ 20.

**{¶26}** The appellate court is especially deferential to a jury verdict as the elimination of such a verdict results in the reviewing court sitting as "the thirteenth juror." *See Thompkins*, 78 Ohio St.3d at 387. In fact, only a unanimous three-judge panel can reverse a jury verdict on manifest weight grounds. Ohio Constitution, Article IV, Section 3(B)(3).

**{¶27}** Appellant was convicted of aggravated menacing under R.C. 2903.21(A). This statute provides: "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family." R.C. 2903.21(A). In addition to any other basis, the victim's belief may be based on the offender's words or conduct directed at or identifying a corporation, association, or other organization where the victim works or belongs. *Id.*

**{¶28}** In reviewing the weight of the evidence, the state emphasizes that Appellant threatened Dispatcher 1 while acting irate. He told Dispatcher 1 she was going to die if she did not switch the color of her jacket to white. He refused to believe that they were not holding his friend. He pounded on the window of the

dispatch room and threatened to drive his car through the building. He then ran around the police station trying to gain access through three different doors. When that was unsuccessful, he ran to his vehicle. Dispatcher 1 testified that she believed Appellant was going to cause her serious physical harm. (Tr. 84-85, 87). The state notes that it was not required to show Appellant's intent to carry out the threat, citing *State v. Ali*, 154 Ohio App.3d 493, 2003-Ohio-5150, 797 N.E.2d 1019, ¶ 27 (7th Dist.).

{¶29} Appellant focuses on the testimony suggesting he was suffering from a mental episode at the time of the offense. For instance, he was described as irate, crazy, and mad. He was looking for a person who had not been arrested and an officer who did not work there. He informed the officers that he was the "Antichrist." The lieutenant completed a "pink slip" to have Appellant evaluated as a danger to himself or others. Appellant concludes that, because he was suffering from a mental disorder, it was contrary to the manifest weight of the evidence to find he acted with the required mental state of knowingly.

{¶30} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). This mental state is less than the mental state of purpose, which involves the specific intention to cause a certain result. *See* R.C. 2901.22(A).

{¶31} Appellant's position is akin to a diminished capacity argument. The concept of diminished capacity is that mental illness prevented the defendant from forming a specific mental state that is an element of the offense. *See, e.g., State v. Curry*, 45 Ohio St.3d 109, 111, 543 N.E.2d 1228 (1989).[1]

{¶32} By way of comparison, the concept of legal insanity is an affirmative defense that exists independent of the existence of the elements of the offense. *Id.* at 111-112. An affirmative defense, such as insanity, represents a "confession and avoidance," whereby the defendant admits the elements of the crime but seeks to

---

[1] Diminished capacity often refers to a lesser mental state. For instance, if a defendant who was charged with aggravated menacing was not shown to have acted knowingly, a lesser included offense of disorderly conduct could come into play (or if no lesser included instruction was provided, an acquittal could result).

prove some additional fact that absolves the defendant of guilt. A defendant can be found "not guilty by reason of insanity" only if he proves that at the time of the commission of the offense, he "did not know, as a result of a severe mental disease or defect, the wrongfulness" of his acts. R.C. 2901.01(A)(14), citing R.C. 2901.05 (placing the burden on the defendant to show an affirmative defense by a preponderance of the evidence).

**{¶33}** No insanity defense was pled or presented in this case. Rather, Appellant is arguing that the jury should have weighed the evidence and concluded that his mental disorder precluded him from forming the mens rea of knowingly. His argument appears to be the "functional equivalent" of a diminished capacity defense. *See State v. Fulmer*, 117 Ohio St.3d 319, 2008-Ohio-936, 883 N.E.2d 1052, ¶ 69, citing *State v. Fulmer*, 11th Dist. No. 2005-L-137, 2006-Ohio-7015, ¶ 42 (Westcott Rice, J., dissenting). *However, Ohio does not recognize the defense of diminished capacity. Fulmer*, 117 Ohio St.3d 319 at ¶ 66.

**{¶34}** This means if a defendant does not raise an insanity defense, then he cannot offer testimony that he lacked the mental capacity to form the specific mental state, such as knowingly, required for a particular case. *Id.* at ¶ 60-61, 64-65, 67, 69-70. The Supreme Court has explained that a determination of insanity is "a gross evaluation that a person's conduct and mental state is so beyond the limits of accepted norms that to hold him criminally responsible would be unjust. This is a far cry from accepting testimony which purports to prove or disprove a specific intent, as distinguished from criminal responsibility." *See State v. Wilcox*, 70 Ohio St.2d 182, 192, 436 N.E.2d 523 (1982). *See also State v. Cooey*, 46 Ohio St.3d 20, 26, 544 N.E2d 895 (1989) ("The *Wilcox* rule is based on a mistrust of the ability of psychiatry to accurately 'fine-tune' degrees of capacity among offenders who are sane - i.e., who have the minimal capacity to act voluntarily.").

**{¶35}** This prohibition typically relates to psychiatric testimony proffered to disprove a mental state (unrelated to the affirmative defense of insanity). *See Wilcox*, 70 Ohio St.2d at 199 ("a defendant may not offer expert psychiatric testimony, unrelated to the insanity defense, to show that the defendant lacked the mental capacity to form the specific mental state required for a particular crime or

degree of crime."). The *Fulmer* case did not involve an attempt to present psychiatric testimony that the defendant suffered from the alleged mental disorder but involved the defense's use of testimony of the state's forensic pathologist to show that a certain condition could exist in general. *Fulmer*, 117 Ohio St.3d 319 at ¶ 11, 76.

**{¶36}** In *Fulmer*, the trial judge instructed the jury that because the defendant did not raise the defense of not guilty by reason of insanity and the state of Ohio does not recognize diminished capacity, the jury could not consider any evidence involving the defendant's medical condition in determining whether he possessed the requisite mental state of knowingly. *Id.* at 61. The Supreme Court praised the trial judge's instruction. *Id.* Finally, the *Fulmer* syllabus did not limit the holding to psychiatric or expert testimony. The syllabus provided: "In cases in which a defendant asserts the functional equivalent of a diminished-capacity defense, the trial court should instruct the jury to disregard the evidence used to support that defense unless the defendant can demonstrate that the evidence is relevant and probative for purposes other than a diminished-capacity defense." *Id.* at syllabus.

**{¶37}** Based upon the Ohio Supreme Court's rejection of diminished capacity, the Twelfth District upheld a juvenile court's decision excluding a juvenile's testimony as to her mental state at the time of the offense finding the testimony was introduced to assert diminished capacity. *In re S.K.H.*, 12th Dist. No. CA2012–10–020, 2013-Ohio-2863, ¶ 16-17. The Eighth District overruled a defendant's argument that she could not have formed the requisite intent of knowingly due to mental illness. *State v. Cockrell*, 8th Dist. Nos. 86701, 86703, 2006-Ohio-2301, ¶ 19. *See also State v. Bowman*, 6th Dist. No. L-87-337 (Aug. 12, 1988) (if an insanity defense was not proven, then the defendant cannot argue a lack of mens rea due to a mental illness).

**{¶38}** After reviewing all of the evidence and inferences to be drawn therefrom, it could reasonably be concluded that Appellant knowingly caused Dispatcher 1 to believe that he would cause her serious physical harm. *See* R.C. 2903.21(A) (defining aggravated menacing). A jury could rationally find Appellant was "aware [his] conduct would probably cause" the dispatcher to believe he would cause her serious physical harm. *See* R.C. 2901.22(B) (defining knowingly). He told the dispatcher that she would die if she did not change the color of her jacket. When

she reiterated that his friend was not being held at the station, he angrily pounded on the glass that separated them. He threatened to drive his car through the building. He tried to enter the building through various doors before running to his vehicle.

**{¶39}** We cannot conclude the jury "clearly lost its way" in finding Appellant guilty of aggravating menacing. *See Thompkins*, 78 Ohio St.3d at 387. This case does not present "exceptional circumstances" or evidence that weighs "heavily" against Appellant's conviction. *See id.; Tate*, 140 Ohio St.3d 442 at ¶ 20. This assignment of error is overruled.

**{¶40}** For the foregoing reasons, Appellant's conviction is affirmed.

Donofrio, P.J., concurs.

DeGenaro, J., concurs.