Robb, P.J.
{¶ 1} Defendant-Appellant Robert Mieczkowski appeals from his conviction entered in Jefferson County Common Pleas Court for Having an Unlawful Interest in a Public Contract in violation of R.C. 2921.42(A)(1). Multiple issues are raised in this appeal. Appellant contends R.C. 2921.42 is unconstitutionally void for vagueness. Appellant asserts the trial court erred in granting the state's request to use the definition of "employ" and "authority" as set forth in an Ethics Commission advisory opinion. Appellant asserts the trial court erred when it allowed the state to ask its witness the ultimate issue- whether Appellant's act constituted a crime. He also argues the trial court erred in failing to issue a discovery sanction when a witness was permitted to testify about her review of documents that Appellant had not received during discovery. Next, Appellant asserts misconduct by the prosecutor occurred during voir dire, and according to Appellant, this tainted the entire trial with unfairness. Appellant argues he was deprived of effective assistance of counsel which resulted in prejudice. Appellant argues the state did not meet its burden of production and a Crim.R. 29 motion for acquittal should have been granted. Lastly, Appellant asserts the verdict was against the manifest weight of the evidence. The state disputes all of these arguments and contends there is no basis for reversal. For the following reasons, these arguments lack merit and/or the errors did not result in prejudice to Appellant. The conviction is affirmed.
Statement of the Facts and Case
{¶ 2} In 2013, Appellant was the police chief of the Village of Smithfield. It is undisputed that the two police cruisers used by the Village were in disrepair and the Village desperately needed new cruisers.
{¶ 3} The Village authorized $42,000 to $46,000 to be spent on a new cruiser. Officer Casey Robinson was in charge of getting quotes for this new cruiser. Tr. 327. He requested three quotes and upon receiving them he gave them to Appellant. One of the vehicles was a 2010 Dodge Charger. Appellant called the dealership *765 and negotiated a price of $25,000. Exhibit 14.
{¶ 4} The thought was that spending only $25,000 on one car would permit them to purchase another used vehicle to be used for a canine unit. Exhibit 14. Officer Robinson testified that he said to Appellant, "What about the Tahoe?" Tr. 335. Officer Robinson was aware Appellant was selling a used Tahoe. Officer Robinson indicated he was the first person to mention the Tahoe.
{¶ 5} The Village did purchase the Tahoe from Appellant. It is undisputed Appellant did not vote on the purchase of the Tahoe. The purchase of the Tahoe was unanimously approved by the Village council and the mayor.
{¶ 6} Records of the vote to purchase the Tahoe and the Charger are missing or were never kept by the Village. Likewise, the Village records do not contain the contracts to purchase the Tahoe and the Charger. The evidence submitted at trial indicated the Village consistently kept poor records and during the auditing process the state could not follow the generally accepted government auditing standards because of the poor record keeping.
{¶ 7} Through testimony it was established the agreement between Appellant and the Village was that Appellant sold the Tahoe to the Village for $12,000. The Village paid $3,000 as a down payment and then $500 a month until it was paid in full. As to interest, the evidence indicates Appellant did not charge the Village interest. It is undisputed the NADA value of the vehicle was $12,050.
{¶ 8} The purchase agreement was fulfilled by both parties. Records from the Village show it potentially overpaid Appellant by $500. The records also indicate the Village did not always pay the $500 monthly charge; it would miss a payment and then pay $1,000 the following month.
{¶ 9} The Village was audited multiple times over the years. The "Assistant Auditor III" with the State Auditor's Office indicated the Village had been declared unauditable several times because it historically had not kept good records. Tr. 405. From 2005 forward, it was cited for violating the Revised Code for not having records. Tr. 407. An investigator from the State Auditor's Office indicated he began investigating the Village in 2014 because the Village had failed to remit state taxes for 15 years. Tr. 445. Councilmen and the mayor from 2013 testified they knew the Village was not paying the taxes. Tr. 386, 395, 399, 517. Testimony also indicated the Village owed Jefferson County over $300,000 for water. Tr. 371, 385-386, 395, 399. The financial status of the Village in 2013 was not good; the mayor when asked if the Village was in "absolute dire straight" stated "yes." Tr. 385, 517. One councilman stated that at that time, the Village had a tendency to pay the smaller bills but not the larger outstanding bills to the county and the government. Tr. 401.
{¶ 10} In 2015, Appellant was indicted for violating R.C. 2921.42(A), Having an Unlawful Interest in a Public Contract, a fourth-degree felony. 12/2/15 Indictment. Appellant entered a not guilty plea and the case proceeded through discovery. In discovery Appellant was provided with two pages of copied minutes from the Smithfield council meetings that occurred in March and June 2013.
{¶ 11} The jury found Appellant guilty. 1/18/17 Jury Verdict. Appellant filed a motion to set aside the jury verdict and a Crim.R. 29 motion for acquittal. 1/20/17 Motion. The trial court overruled the motion and set the matter for sentencing. 3/20/17 J.E.
*766 {¶ 12} Appellant was sentenced to three years of community control, which included 60 days of electronically monitored house arrest, 24 months of probation, 360 hours of community service, and $500 in restitution. 5/22/17 J.E.
{¶ 13} Appellant timely appealed his conviction.
First Assignment of Error
" Ohio Revised Code § 2921.42 is void for vagueness under the Fourteenth Amendment to the U.S. Constitution and Section 10 of Ohio's Constitution."
{¶ 14} Appellant contends R.C. 2921.42(A)(1) is unconstitutionally vague. This statute states:
(A) No public official shall knowingly do any of the following:
(1) Authorize, or employ the authority or influence of the public official's office to secure authorization of any public contract in which the public official, a member of the public official's family, or any of the public official's business associates has an interest;
R.C. 2921.41(A)(1).
{¶ 15} The alleged offending portion of the statute is "employ the authority or influence of the public official's office." Appellant questions whether this means mere "water cooler" talk or does it require the official to send a letter on official letterhead to the decision-making body requesting authorization. He asserts a person of ordinary intelligence is not able to determine what conduct the statute prohibits. He cites to cases dealing with other statutes as a guide to demonstrate this statute is unconstitutionally vague.
{¶ 16} One of those cases was a United States Supreme Court case quoting a District of Columbia case dealing with a prohibition against railway companies running "crowded cars." Connally v. General Construction Company , 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). "Crowded cars" was not statutorily defined. The other case was an Ohio Supreme Court case addressing R.C. 2923.04(A) and the use of the term "facilitate" as referring to a criminal syndicate. State v. Young , 62 Ohio St.2d 370, 376, 406 N.E.2d 499 (1980). "Facilitate" was not statutorily defined. It appears the reference to the cases he cites is due to the absence of any statutory definition for "authority or influence of public office."
{¶ 17} The state counters arguing R.C. 2921.42 conveys a sufficiently definite warning as to the proscribed conduct that a person of common intelligence would not have to guess at its meaning. The state indicates the general assembly is not required to define every word of the statute. It asserts the statute requires the public official to knowingly use his authority or influence to secure the public contract. This indicates the statute is not meant to punish innocent discussion at the "proverbial water cooler." The state argues the statute provided sufficient notice of its proscriptions and reasonably clear guidelines so that Appellant would understand what the law required of him.
{¶ 18} "The void-for-vagueness doctrine is a component of the right to due process and is rooted in concerns that laws provide fair notice and prevent arbitrary enforcement." In re Application of Columbus S. Power Co. , 134 Ohio St.3d 392, 2012-Ohio-5690, 983 N.E.2d 276, ¶ 20. The critical question in void-for-vagueness cases is whether the law affords a reasonable individual of ordinary intelligence fair notice and sufficient definition and guidance to enable him to conform his conduct to the law. City of Norwood v. Horney , 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 86 (2006). The void-for-vagueness doctrine does not require statutes to be *767 drafted with scientific precision. State v. Anderson , 57 Ohio St.3d 168, 174, 566 N.E.2d 1224 (1991). Impossible standards of specificity are not required. State v. Carrick , 131 Ohio St.3d 340, 2012-Ohio-608, 965 N.E.2d 264, ¶ 14. Courts recognize that "[w]ords inevitably contain germs of uncertainty" and do not expect "mathematical certainty" in statutory language. Broadrick v. Oklahoma , 413 U.S. 601, 608, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) ; Grayned v. Rockford , 408 U.S. 104, 110, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).
{¶ 19} Statutes generally enjoy a strong presumption of constitutionality, so to overcome the presumption, the party challenging the law must prove beyond a reasonable doubt that the statute is unconstitutional. State v. Williams , 126 Ohio St.3d 65, 2010-Ohio-2453, 930 N.E.2d 770, at ¶ 20. The party challenging the statute must "show that upon examining the statute, an individual of ordinary intelligence would not understand what he is required to do under the law." State v. Collier , 62 Ohio St.3d 267, 269, 581 N.E.2d 552 (1991). Furthermore, the challenger must show (1) the statute does not give warning to the ordinary citizen of what is required; (2) the statute does not preclude arbitrary and capricious enforcement; and (3) the statute does not ensure that constitutionally protected rights are not unduly infringed. Id. at 271, 581 N.E.2d 552. To be considered vague, "a statute must be vague in all of its applications, assuming the statute implicates no constitutionally protected conduct." Id. at 272, 581 N.E.2d 552. When a criminal statute is involved, the strict construction of criminal provisions must be tempered with common sense and "evident statutory purpose." State v. Sway , 15 Ohio St.3d 112, 116, 472 N.E.2d 1065 (1984).
{¶ 20} It appears Appellant did not raise the void-for-vagueness argument to the trial court. Appellant did argue the Ohio Ethics Commissions definition of "employ the authority or influence of the public official's office" should not have been used in the jury instruction, the verdict was not supported by the manifest weight of the evidence, and there was not sufficient evidence of the alleged crime. Implicit in those arguments is this void-for-vagueness argument. The Second Appellate District has indicated a void-for-vagueness argument is waived if it is not raised to the trial court. Dayton v. Smith , 2d Dist., 2018-Ohio-675, 106 N.E.3d 901, ¶ 29, citing State v. Awan , 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986) (" 'An appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.' " * * * "[T]he question of the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court."). Thus, the issue is waived.
{¶ 21} Regardless, even if it was not waived, the statute is not unconstitutionally void-for-vagueness. Admittedly, there is no case pertaining to R.C. 2921.42(A)(1) and the void-for-vagueness doctrine. Furthermore, Appellant is correct that "employ the authority or influence of the public official's office" is not defined by the Ohio Revised Code. However, that does not mean the statute is vague. The cases cited by Appellant about undefined words in the statute do not stand for the proposition that undefined words render the statute void-for-vagueness.
{¶ 22} The words "employ" and "influence" have common everyday meanings. "Employ" means to put to service or use. Webster's II New Riverside University Dictionary 429 (1984). "Influence" means *768 "exercising ones power." Webster's II New Riverside University Dictionary 627 (1984). An ordinary citizen would understand what it means to use the authority of the public office to secure a public contract or to exercise the power of the public office to secure a public contract. It would not include simple "water cooler" talk.
{¶ 23} The Ohio Ethics Commission has issued decisions on R.C. 2921.42(A)(1). Ethics Commission opinions can be used as persuasive authority on the requirements of a statute. State v. Hunter , 1st Dist. Nos. C-140704, 140717, 2016-Ohio-123, 2016 WL 196972, ¶19, citing State v. Urbin , 100 Ohio St.3d 1207, 2003-Ohio-5549, 797 N.E.2d 985, ¶ 4 (Moyer, C.J., concurring) (explaining it is appropriate to consider opinions from the Ohio Ethics Commission when interpreting the scope of R.C. 2921.42 ). A Commission decision from 2009 states, "Public officials authorize or use their public position to secure authorization of public contracts, under Division (A)(1), if they vote on, deliberate on, recommend, formally or informally lobby for, or take any other official action on the contracts. Adv. Op. No. 88-008." Ohio Ethics Commission, Advisory Opinion No. 2009-06 (Oct. 30, 2009). That statement was derived from the last line of a 1988 advisory opinion where the Commission stated, "Division (A)(1) of Section R.C. 2921.42 of the Revised Code prohibits a member of city council from voting, discussing, deliberating, or otherwise using his official authority or influence, formally or informally, to secure a contract between the city and an insurance company which he serves as director." Ohio Ethics Commission, Advisory Opinion No. 88-008 (Oct. 11, 1988).
{¶ 24} The language of the advisory opinions seems to coincide with what an ordinary person would believe constitutes "employ the authority or influence of the public official's office." Recommending the council to contract with oneself when the person holds a public office could be exerting ones authority or using the influence of the office. A recommendation implies there are choices and expresses the preference of the one making the recommendation. If the one recommended is your own preference, then this recommendation could be exerting ones authority to obtain the contract.
{¶ 25} It is observed, the notes of the statute do indicate there is not a blanket prohibition on having an interest in a public contract:
This section consolidates and expands upon former prohibitions in the criminal code relating to public officials having an improper interest in certain contracts. It includes contracts for services by or for the use of public agencies or the state and its subdivisions, and also includes a provision specifically prohibiting public officers from employing their position to broker or facilitate brokering the investment of public funds when they or their family or associates will reap unconscionable benefits thereby.
The purpose of this section is to insure that public agencies stand on at least an equal footing with others with respect to necessary business dealings. Accordingly, the section does not prohibit public servants from all dealings in which they may have some interest, no matter how remote or above-board. It prohibits only those dealings in which there is a risk that private considerations may detract from serving the public interests. Thus, there is no violation of this section where a public servant's connection with a contracting party is as a stockholder or creditor with a strictly limited stake which is fully revealed, provided there is no purpose to defraud. Similarly, there is no violation of the section when obtaining *769 necessary supplies or services from a contractor in which a public servant has an interest, as part of a course of dealing established before the public servant assumed office, provided the transaction is at arm's length, and provided the agency's only alternatives to dealing with the contractor are to pay more or do without the supplies or services involved.
R.C. 2921.42 (Staff Notes).
{¶ 26} Therefore, some interest is permitted when there is full disclosure or if the statutory defense applies. The statutory defense is set forth in R.C. 2921.42(C). We can envision that someone might argue that the above note and the statutory defense make it unclear what the statute prohibits since inter-dealings are allowed, and as such, the terms "employ the authority or influence of the public official's office" should be defined to clarify what acts are prohibited.
{¶ 27} That argument, however, is unpersuasive and flawed. The terms are discernable. Furthermore, when the statute is read in its entirety, the statutory defense helps clarify what actions can and cannot be done. As previously stated "[w]ords inevitably contain germs of uncertainty" and we do not expect "mathematical certainty" in statutory language. Broadrick , 413 U.S. at 608, 93 S.Ct. 2908 ; Grayned , 408 U.S. at 110, 92 S.Ct. 2294. The key is whether the law affords a reasonable individual of ordinary intelligence fair notice and sufficient definition and guidance to enable him to conform his conduct to the law. Norwood , 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115 at ¶ 86. The language of R.C. 2921.42(A)(1) gives that notice.
{¶ 28} This assignment of error lacks merit.
Second Assignment of Error
"The trial court erred when over objection it granted the state's untimely request to add language from an Ethics Commission advisory opinion to the jury instructions in violation of Appellant's right to due process of law guaranteed by the Ohio and Federal Constitutions, and his right to a fair trial. The advisory opinion was not a statement of binding law and it [sic] void for vagueness."
{¶ 29} This assignment of error addresses the jury instruction on "employ the authority or influence of the public official's office." The jury was instructed:
Employ. To make use of. To use as an agent or substitute in transacting business. To commission entrust with the performance of certain acts or functions or with the management of one's affairs.
Authority. An accepted source of information, advice or substantiation; the right to respect or acceptance of one's word, command, thought, et cetera; commanding influence; denotes a power or right to direct the actions or thoughts of others; power or right, usually because of rank of office, to issue commands and to punish for violations.
* * *
Public officials authorize or use their public positions to secure or authorization of public contracts, under *770 O.R.C. 2942.21(A)(1) [sic], if they vote on, deliberate on, recommend, formally or informally lobby for or take any other official action on the contracts.
Tr. 650-61.
{¶ 30} The language of this last paragraph comes from the 2009 advisory opinion cited in the first assignment of error. That Ethics Commission Advisory opinion states, "Public officials authorize or use their public position to secure authorization of public contracts, under Division (A)(1), if they vote on, deliberate on, recommend, formally or informally lobby for, or take any other official action on the contracts." Ohio Ethics Commission, Advisory Opinion No. 2009-06 (Oct. 30, 2009).
{¶ 31} Appellant uses this assignment of error as an extension of his first assignment of error. He contends the trial court untimely allowed, over objection, the definition from an Ohio Ethics Commission decision for the term "employ the authority or influence of the public official's office." He contends that definition, like the statute, is vague and leaves the public uncertain as to the conduct prohibited. He asserts the word "lobby" is vague and it is not understandable what "formally or informal lobby" means. He further contends the advisory opinion expanded the scope of activities prohibited under the statute. He argues the opinion lists ways the statute can be violated that are not actually listed in the statute. He also asserts the advisory opinion language could not be used because it is not binding law and there is no legal authority permitting the use of Ohio Ethics Commission advisory opinions to be used as special jury instructions. Lastly, Appellant asserts the untimeliness of the request prejudiced him because his trial strategy would have been different if he knew this definition was going to be used.
{¶ 32} The timeliness argument will be addressed first. The instruction was requested at the close of all the evidence, which was on January 18, 2017. Crim.R. 30(A) states, "At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests." On May 3, 2016, in a pre-trial order, the trial court indicated proposed jury instructions were required to be filed by September 13, 2016. 5/3/16 J.E. Therefore, the request for the instruction was technically untimely.
{¶ 33} Jury instructions "must be given when they are correct, pertinent, and timely presented." State v. Joy , 74 Ohio St.3d 178, 181, 657 N.E.2d 503 (1995). Jury instructions are matters left to the sound discretion of the trial court. State v. Gomez , 12th Dist. No. CA2012-07-129, 2013-Ohio-2856, 2013 WL 3379580, ¶ 7. "This Court reviews a trial court's decision to give or not give jury instructions for an abuse of discretion under the particular facts and circumstances of the case." State v. Calise , 9th Dist. No. 26027, 2012-Ohio-4797, 2012 WL 4897840, ¶ 68. An abuse of discretion can only be found if the court's attitude is unreasonable, arbitrary or unconscionable. State v. Adams , 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). Although the request may not have been timely, it was within the trial court's discretion to determine if the request should be included in the instruction.
{¶ 34} It was not an abuse of discretion to allow the untimely request. Appellant made the same argument to the trial court that he makes to this court. He contends had he known this instruction would have been given it would have affected his trial strategy. The state's theory of the case was Appellant employed his authority by recommending the purchase of his vehicle. His own statements indicated he presented the sale of the Tahoe to either the safety council or the full council (it is unclear which one he recommended it to). Appellant had the opportunity to cross examine witnesses regarding this matter. The addition of the advisory opinion did not affect his defense.
{¶ 35} Therefore, the untimeliness argument is meritless.
{¶ 36} The other arguments asserted by Appellant concern the merits of *771 the trial court's decision to add the language of the Ohio Ethics Commission advisory decision. The mere fact that the language comes from an Ohio Ethics Commission advisory opinion does not preclude it from being used in jury instructions. As aforementioned, jury instructions "must be given when they are correct, pertinent, and timely presented." Joy , 74 Ohio St.3d at 181, 657 N.E.2d 503. Furthermore, in a concurring opinion, Chief Justice Moyer explained:
Ethics Commission advisory opinions have been incorporated into Ohio Jury Instructions. 4 Ohio Jury Instructions (2003), 599-600, Section 521.42. While they are not binding on the courts, these opinions are entitled to weight by the courts, and Ohio courts have found commission opinions useful in applying and interpreting the law. See e.g., Marsh v. Lampert (1998), 129 Ohio App.3d 685, 687, 718 N.E.2d 997 ; Walsh v. Bollas (1992), 82 Ohio App.3d 588, 591, 612 N.E.2d 1252. See, also, State ex. rel Mallory v. Pub. Emp. Retirement Bd. (1998), 82 Ohio St.3d 235, 241, 694 N.E.2d 1356, fn. 1 ; id. at 252, 694 N.E.2d 1356 (Lundberg Stratton, J., dissenting).
Urbin , 100 Ohio St.3d 1207, 2003-Ohio-5549, 797 N.E.2d 985 at ¶ 13 (Moyer, C.J., concurring).
{¶ 37} Accordingly, if the language in the advisory opinion is a correct statement of the law, then the trial court does not abuse its discretion in using it for a jury instruction.
{¶ 38} Here, Appellant argues the language in the advisory opinion is not only vague, but it also adds examples of how the statute is violated that are not listed in the statute. These seem to be somewhat contradictory positions. Regardless, both positions are meritless. Although the trial court did not need to include the advisory opinion language in the jury instructions because the statute is clear, the decision to include it does not amount to an abuse of discretion. The advisory opinion language is merely supplementary to the language of the statute. The language used in the statute is not vague, the language of the advisory opinion is not vague, and the language used in the advisory opinion does not add ways the statute is violated that are not enumerated in the statute. A reasonable individual of ordinary intelligence is provided with fair notice and sufficient definition and guidance to enable him to conform his conduct to the law.
{¶ 39} It is easy to see how voting on, deliberating on, lobbing for or taking an official action is exerting the influence of one's position. Recommending may also be a form of lobbying. If there are three choices and the public official recommends his choice over the other two choices this might be a form of lobbying and using one's position to acquire the contract. Applied to the facts before us, it appears there was only one choice for the canine unit, which was the Tahoe. By having no other choices it could be determined to be an implicit recommendation and exertion of one's position to obtain the contract. As the note following R.C. 2921.42 provides:
The purpose of this section is to insure that public agencies stand on at least an equal footing with others with respect to necessary business dealings. Accordingly, the section does not prohibit public servants from all dealings in which they may have some interest, no matter how remote or above-board. It prohibits only those dealings in which there is a risk that private considerations may detract from serving the public interests.
R.C. 2921.42 (Staff notes).
{¶ 40} Thus, more options without a recommendation would ensure there was no risk that private considerations would detract from serving the public.
*772 {¶ 41} For the above stated reasons, this assignment of error is meritless.
Third Assignment of Error
"The court erred when it permitted the state to question a witness regarding an ultimate issue of law - whether Appellant may have committed a crime - and by making statements that bolstered the testimony of the State's witness."
{¶ 42} This assignment of error raises issues with a portion of Officer Casey Robinson's testimony. On direct examination Officer Robinson indicated he was in charge of finding the Charger. Tr. 345. He testified Appellant, Assistant Chief Thomas, and himself were sitting around discussing the money they saved on the Charger and thought they could get a used vehicle for the canine unit. Tr. 334-335. It was at that point Officer Robinson suggested Appellant's Tahoe might work. Tr. 335. Officer Robinson indicated he did not have any part in the acquisition of the Tahoe for the canine unit, and he did not recommend its purchase to the Village council. Tr. 334. He testified the job of recommending the purchase would have been Appellant's, and he did not know who actually presented the Tahoe to the council. Tr. 334, 343. Then the following colloquy occurred:
Q. Now, when you indicated that you suggested that Mieczkowski sell the Tahoe to the Village, had you ever had any cause to investigate cases for unlawful interest in a public contract?
A. No.
Q. Had you ever had any dealings with that offense?
A. No.
Q. Do you now know whether it is in the Revised Code as a crime?
A. Yes.
Q. And is it a crime?
A. Yes.
Mr. Stickles [defense counsel]: Objection. Ask to clarify that please.
The Court: The statute states that it is a crime to commit what I read to the Jury. I'm going to leave it at that.
Mr. Stickles: Thank you, Your Honor.
The Court: And he --- and he knows about that statute I take it is what you're saying. Proceed.
By Mrs. Anderson [Prosecutor]:
Q. And prior to - prior to seeing Chief Mieczkowski indicted had you ever seen that offense before?
A. No.
Q. Okay. And did you know the conduct may have been prohibited?
Mr. Stickles: Objection.
The Court: One moment. One moment before you answer that.
Mr. Stickles: May we have a Side-Bar?
The Court: No. Wait one second. The objection is sustained. Rephrase the question.
By Ms. Anderson:
Q. Okay when you suggested that Chief Mieczkowksi sell the vehicle to the Village did you know that that conduct may have been prohibited?
A. No.
Tr. 345-347.
{¶ 43} Appellant contends although the objection to this testimony was sustained the trial court should not have permitted further questioning of this kind. He asserts the testimony violates Evid.R. 701 and 704. He claims Officer Robinson's testimony goes to the ultimate issue of whether Appellant's conduct violated R.C. 2921.42(A)(1). Appellant asserts this is not permissible.
{¶ 44} The admission or exclusion of evidence rests within the sound discretion of the trial court.
*773 State v. Sage , 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987) ; Urbana ex rel. Newlin v. Downing , 43 Ohio St.3d 109, 113, 539 N.E.2d 140 (1989) (An abuse of discretion standard applies to a trial court's decision to admit testimony under Evid.R. 701.); Clarkwestern Dietrich Bldg. Systems, LLC v. Certified Steel Stud Assn., Inc. , 12th Dist. No. CA2016-06-113, 2017-Ohio-2713, 2017 WL 1843113, ¶ 33 (A ruling on Evid.R. 704 is reviewed for an abuse of discretion.). "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Adams , 62 Ohio St.2d at 157, 404 N.E.2d 144.
{¶ 45} Evid.R. 701 is the rule on opinion testimony by a lay witness. It provides, "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Evid.R. 701. Evid.R. 704 states, "Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704. The notes to Evid.R. 704 help to clarify its meaning. The notes indicate opinion evidence on an ultimate issue generally is not admissible whenever it answers "the very question as to the existence or non-existence of an ultimate fact to be determined by the jury," however, it is not excludable per se. Evid.R. 704 (staff notes), citing Shepard v. Midland Mutual Life Ins. Co. , 152 Ohio St. 6, 87 N.E.2d 156 (1949). The notes differentiate between a witness permissibly testifying to a testator's capacity to form intent to dispose of property by a will, but impermissibly testifying to the capacity to make a will. Evid.R. 704 (staff notes), citing Runyan v. Price , 15 Ohio St. 1 (1864), Dunlap, Exr., v. Dunlap , 89 Ohio St. 28, 104 N.E. 1006 (1913) ; Weis v. Weis , 147 Ohio St. 416, 72 N.E.2d 245 (1947).
{¶ 46} Officer Robinson's testimony did not violate either of these rules. Appellant's argument insinuates Officer Robinson was asked and offered an opinion on whether Appellant violated R.C. 2921.42(A)(1) when he sold the Tahoe to the Village. In order to violate the statute Appellant had to "employ the authority or influence" of his office in selling the Tahoe to the Village. The ultimate issue in this case is whether Appellant's actions employed the authority or used the influence of his office. However, the questions asked by the state were not whether Officer Robinson believed the acts committed by Appellant violated the statute. The wording used was "did you know this statute existed," "have you ever dealt with this statute before," and "is it a crime to violate this statute." Tr. 345-346. Officer Robinson indicated he did not know about the statute, he had never dealt with it, and it is a crime to violate the statute. He did not offer an opinion on whether Appellant's conduct violated the statute.
{¶ 47} Reading this portion of the transcript quickly or not intently listening to the words used by the state may give the impression the state was using Officer Robinson's testimony as a legal opinion that Appellant's conduct violated the statute. However, when the facts of this case are considered that was not necessarily the state's purpose or attempt. Officer Robinson testified he was the one who suggested to Appellant that the Tahoe could be used for a canine unit. The state's position was Appellant's act of selling the Tahoe to the Village constituted a violation of R.C. 2921.42(A)(1). The questions about the statute were to show he was not trying to set his boss up to potentially commit a crime; it was a way to ensure Officer Robinson *774 was not an unlikable witness. Furthermore, since Officer Robinson testified he was not in the room when the Tahoe negotiations occurred he could not indicate what Appellant's actions were or even offer an opinion (whether or not it was permissible) on whether Appellant's actions violated the statute. Regardless, the wording used does not ask if Appellant violated the statute; Officer Robinson offered no legal opinion on whether the sale of the Tahoe violated the statute.
{¶ 48} Even if the questioning by the state gave the insinuation Officer Robinson was testifying that the sale of the Tahoe violated R.C.2921.42(A)(1), defense counsel on re-cross examination had Officer Robinson clarify that he was not offering any opinion on whether Appellant violated the statute:
Q. Okay. When you were giving answers with regards to the validity of the crime on Mrs. Anderson - Mrs. Anderson's questions were you in any way giving your opinion about Mr. Mieczkowski's actions or of the allegations against him?
A. No.
Tr. 347.
{¶ 49} Thus, if there was error it was harmless.
{¶ 50} In conclusion, the trial court did not abuse its discretion in allowing the testimony. However, even if the trial court should have not allowed the testimony, the error was harmless. This assignment of error lacks merit.
Fourth Assignment of Error
"Trial court erred when it failed to investigate and order a sanction for a discovery violation the state committed and instead permitted a witness to testify to conclusions she reached based on her review of documents that the defense had moved to compel but that the state failed to produce, all in violation of the defendant's right to due process and a fair trial."
{¶ 51} This assignment of error is based on testimony from Christina Latynski, the Assistant Auditor III for the State of Ohio. During her testimony she indicated the minutes from the council meetings for 2013 were recreated and every month's meeting minutes were reviewed. Appellant claims that he only saw the minutes from March and June 2013 and the withholding of the minutes from the other months after they were subpoenaed violated the discovery order. Appellant admits he only objected to a portion of Latynski's testimony. The objection to that portion was sustained. The trial court did not issue any other discovery violation sanction. He contends at a minimum the trial court should have ordered a continuance and instructed the state to produce the full set of minutes.
{¶ 52} The state contends Appellant was permitted to inspect the minutes pursuant to the trial court's May 3, 2016 Judgment Entry. It asserts no statement made by the witness would surprise Appellant. The state argues whether or not minutes existed for each month is irrelevant because the defense was that the lack of records were specific to the purchase and sale of the Tahoe and there were no records. The record is clear defense counsel knew no minutes indicated the Village approved the purchase of the Tahoe. The state further argues Appellant saw all the minutes. In support of that position the state cites to Appellant's closing statement where the state alleges counsel referenced reviewing all of the minutes.
{¶ 53} The record confirms the state's witness, Christina Latynski, Assistant Auditor III for the State of Ohio, indicated every month's minutes from 2013 was reviewed:
*775 Q. Okay. Are all records supposed to be maintained in that Village building?
A. Yes.
Q. Were they?
A. No.
Q. Where else would they have been?
A. During the course of the audits that we have performed the former mayor, former councilwoman Patricia Freeland had a lot of records that she kept at her house because prior to the local government services doing the reconstruction the Village had hired her to reconstruct records.
Q. And did you ever have to go over to Patricia Freeland's house to get records?
A. Yes, I had.
* * *
Q. Okay. And talking about council, did - were you able to see all of the minutes for 2013 during the course of your audit?
A. For 2013 we did have a minute record for each month.
Q. And in any of those months did you see authorization for the Tahoe?
A. No, I did not.
Q. And did the Village - typically in governmental recordkeeping how does the Village tell the world what it has done?
Mr. Stickles: Objection.
The Court: I think it's a fair question.
Mr. Stickles: Clarification, Your Honor, this Village or all villages just because -
The Court: Well, if you want to - if you want to do that, the Village of Smithfield, how do they tell the world what they have done.
Tr. 413-415.
{¶ 54} Thus, there was testimony there were minutes from every month in 2013. Appellant did not object to the testimony on the basis of the lack of complying with his earlier discovery request. However, shortly thereafter Appellant did object:
Q. Okay. And so council was aware that the Village wasn't paying all of its bills.
A. Correct.
Q. And that was contained in the minutes that you reviewed.
A. It was. At one point, I don't know that it was in '13 because I had to finish reading the minutes up through the most available in 2015, council did actually tell the -
Mr. Stickles: Objection.
The Court: One moment. When you say "Council did tell" I don't know what you get - where you get that information.
A. During the course of reading the minutes.
The Court: So, you're referring to the minutes of a particular meeting of council -
A. Correct.
The Court: - that gave you this information.
A. Yes.
The Court: Do we need to know what council meeting we're talking about?
Mr. Stickles: I'm going to request a Side-Bar, Your Honor.
The Court: All right. We'll have a Side-Bar. Ladies and Gentlemen, you can stand and stretch.
(A Side-Bar Discussion was had between Counsel and the Court out of the hearing of the Jury.)
The Court: All right. Let me tell you where I was when I asked my question. She was testifying that "council said" and I don't know what she meant by that and I certainly don't want it to be in a manner of hearsay but then she did say she was testifying now from her *776 knowledge of council minutes. Okay. Go ahead.
Mr. Stickles: Two were turned over. If they're not March and June, I was never given any other minutes for the entire year of 2013.
Mrs. Anderson: You subpoenaed them, Steve.
Mr. Stickles: And the motion to quash and they were never provided. The Village never provided anything. Whether I subpoenaed them or not, Judge, doesn't matter. She's asking questions about things that her witness used. Same objection she just made. If her witness used them to form her basis I'm entitled -
The Court: Do you have them?
Mrs. Anderson: I don't. She's testifying as her job as a government auditor and during the course of her employment these are things that she reviews in order to perform her audit and complete her audit.
The Court: What is she going to testify to?
Mrs. Anderson: Honestly I'm not sure where she was going with this, Judge.
The Court: Well, that's why I'm saying. I mean, is this a point that we need to be debating at this point in time? Can we just move on? The reason I'm saying it is this. What is good for the goose is good for the gander and if indeed there are minutes that she has used that he doesn't have access to, I would think that he has the right to see them before she testifies from them as to what council said or did.
Mrs. Anderson: No. I - I don't -
The Court: Okay.
Mrs. Anderson: -- disagree, Your Honor.
The Court: All right. Let's do it this way. I'm going to sustain the objection at this time. Now, if you get to a point where there are some records that could be made available by this witness before you release her that can clarify a point that you think you have to make, so long as Steve gets an opportunity to see it before she testifies I will allow that and I won't allow it until I see it too and see whether or not we have any issues but at this point in time you are going to go in another direction. Okay. All right. So, the question is - the objection is sustained. The question is not allowed. We go from there.
Tr. 418-421.
{¶ 55} Therefore, an objection was lodged and sustained. In this discussion the state does not dispute the minutes were not turned over; it did not direct the trial court to the May 3, 2016 judgment entry. Instead, the state admitted Appellant has the right to see the minutes prior to the witness testifying about the contents of the minutes.
{¶ 56} The state suggests defense counsel reviewed all the minutes and as proof cites this court to Appellant's closing arguments. The state's suggestion is not supported by the record. The portion of the closing argument the state cites this court to is the state's closing argument, not Appellant's. Furthermore, Appellant's closing argument clarifies that Appellant's counsel only received and reviewed minutes from two months in 2013:
You know what? Record keeping is a wreck. Mrs. Anderson liked to say that I got two minutes for the year 2013. Two. Okay. One says they're [cruisers] a mess and one says basically yeah, we need to outfit the Charger and the Tahoe.
Okay. Well, what she was basically inferring there, we got nothing to say that council ever voted on the Tahoe. Well, holy mackerel, we got nothing to say they ever voted on the Charger too. We got nothing. That's not his fault. That's *777 not his fault. It's the clerk-treasurer's fault, the mayor's fault. He's not in charge of keeping these records.
* * *
Solicitor, Mr. Felmet, probably could have cleared some things up. He's not here. They didn't bring him. You didn't hear from him. They didn't even bring the rest of the minutes. I don't have the burden of proof. They do.
Tr. 628-629.
{¶ 57} Considering the above, the record before us supports Appellant's position that he only received and reviewed minutes from March and June 2013, not from every month. That said, that does not mean this assignment of error has merit.
{¶ 58} When Appellant objected to the testimony, the objection was sustained. The criminal rule governing discovery states:
If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.
Crim. R. 16(L).
{¶ 59} The trial court clearly indicated if the minutes were referred to no testimony could be elicited until Appellant and the court saw the minutes. After that point, no testimony on that matter occurred. "Sanctions for a Crim.R. 16 discovery violation are within the discretion of the trial court." State v. Darmond , 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 20. Accordingly, we review a trial court's order regarding Crim.R. 16 discovery violations for an abuse of discretion. The trial court's ruling to the objection lodged was a sound resolution of the issue.
{¶ 60} Appellant, however, did not object to the earlier testimony where the witness testified that she reviewed all of the 2013 minutes and there was no mention of the vote on the purchase of the Tahoe. The failure to properly object to evidence on the basis of a Crim.R. 16 violation operates as a forfeiture of all but plain error on appeal. State v. Payne , 9th Dist. No. 26655, 2013-Ohio-5230, 2013 WL 6212236, ¶ 10 (determining that the defendant forfeited all but plain error in the trial court's admission of evidence that was purportedly not disclosed during discovery in violation of Crim.R. 16 ).
{¶ 61} In this situation, any error that occurred does not amount to plain error. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). An alleged error is plain error only if the error is "obvious," and "but for the error, the outcome of the trial clearly would have been otherwise." State v. Long , 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus. The testimony indicates the only two places the Charger and/or the Tahoe were referenced were in the minutes that were undisputedly provided to Appellant. All witnesses agreed the minutes kept by the Village were not adequate. Latynski testified because of the poor record keeping, the government could not perform a generally accepted government auditing standards (GASA) audit; they got permission to perform a non-GASA audit. Tr. 406. She also testified there were no contracts authorizing the purchase of either the Charger or Tahoe and none of the minutes included an authorization for the purchase of either vehicle. Tr. 412.
*778 {¶ 62} All of this was part of Appellant's defense. He asserted there was no evidence he used his office to sell the Village the Tahoe. There was no evidence in the poorly kept records and there was no testimony stating how he exerted his authority. Consequently, his defense was not affected by the failure to disclose this evidence which had nothing to do with the acquisition of the Tahoe or even the Charger. Consequently, it does not constitute plain error; the alleged error did not affect the outcome of the trial.
{¶ 63} This assignment of error lacks merit.
Fifth Assignment of Error
"Misconduct of the prosecutor during voir dire and during the trial so tainted the trial with unfairness that Appellant was denied due process and a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution."
{¶ 64} This assignment of error raises prosecutorial misconduct. "The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether the remarks prejudicially affected the accused's substantial rights." State v. Twyford , 94 Ohio St.3d 340, 354-355, 763 N.E.2d 122 (2002). The touchstone of this analysis "is the fairness of the trial, not the culpability of the prosecutor." Id. at 355, 763 N.E.2d 122, quoting Smith v. Phillips , 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). A claim of prosecutorial misconduct is not reversible unless the prosecutor's challenged act injected the trial with unfairness so as to constitute a denial of due process. State v. McKelton , 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 257. The key concern is "the fairness of the trial, not the culpability of the prosecutor." State v. Hanna , 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 61, quoting Smith , 455 U.S. at 219, 102 S.Ct. 940.
{¶ 65} Appellant contends four instances of prosecutorial misconduct occurred during the trial - during voir dire, the testimony of Officer Robinson, the failure to produce all of the Village minutes, and during closing arguments.
{¶ 66} The alleged improper conduct during voir dire occurred during the questioning of a prospective juror. That prospective juror was removed through Appellant's use of one of his preemptory challenges. Tr. 168. The misconduct is alleged to have occurred in the following questions where the state allegedly asked the prospective juror, who had previously worked for the City of Steubenville, if it was permissible for him to enter into a contract with the city while he was working for the city:
Mrs. Anderson: All right. And on your questionnaire you mentioned that somebody you knew worked for the City of Steubenville. Was that yourself?
[Prospective Juror]: That's me.
* * *
Mrs. Anderson: And what did you do for the Village - or for the City?
[Prospective Juror]: I was a building official.
* * *
Mrs. Anderson: Okay. Did you have any participation - or did you have any participation in contracting as the building official?
[Prospective Juror]: Of me contracting?
Mrs. Anderson: Yes, you entering into contracts with other agencies.
[Prospective Juror]: Yes, as a normal part of the duty.
Mrs. Anderson: Okay. And so who would you enter into contracts with?
*779 [Prospective Juror]: Lot of various different people.
Mrs. Anderson: Did you have any ethics training on how you should enter into contracts as a City official?
[Prospective Juror]: Official training, no, no official training, no.
Mrs. Anderson: How did you -
[Prospective Juror]: Other than all the State training - State training that I was involved in.
Mrs. Anderson: Okay. So, you did have some training -
[Prospective Juror]: Right.
Mrs. Anderson: - on what to do and what not to do.
[Prospective Juror]: Rights.
Mrs. Anderson: And was it your understanding that you shouldn't enter into contracts with the City of Steubenville personally?
[Prospective Juror]: That's correct.
Tr. 161-163.
{¶ 67} Appellant did not lodge an objection to this line of questioning. Thus, he waived all but plain error. State v. Warwick , 12th Dist. No. CA2017-01-001, 2018-Ohio-139, 2018 WL 417230, ¶ 30 (failing to object to alleged prosecutorial misconduct waives all but plain error); State v. Warrington , 9th Dist. No. 14CA0080-M, 2016-Ohio-244, 2016 WL 363253, ¶ 13 (same); State v. Rucci , 7th Dist. No. 14 MA 47, 2015-Ohio-2097, 2015 WL 3487280, ¶ 45 (same). "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Long , 53 Ohio St.2d 91, 372 N.E.2d 804 at paragraph three of the syllabus.
{¶ 68} Any alleged misconduct occurring in this questioning does not rise to the level of plain error. The Sixth Amendment to the United States Constitution guarantees a defendant the right to a trial by fair and impartial jurors. Irvin v. Dowd , 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). The purpose of questioning prospective jurors during voir dire is to determine whether they can render a fair and impartial verdict. State v. Persohn , 7th Dist. No. 11 CO 37, 2012-Ohio-6091, ¶ 9. The questioning that occurred in this instance was to determine if the prospective juror could be fair and impartial. The basis of the question was to determine whether the juror had any preconceived ideas about if it was a violation of the law for the government employee to contract with the government. It was probably a necessary line of questions to determine if the person could be fair and impartial given that the prospective juror was a former government employee. The prosecutor did not ask if the employee could enter into a contract with the government. Rather, the prosecutor used the word "should," meaning is it the best idea to enter into a contract with the government. Thus, the prosecutor was not asking the ultimate issue.
{¶ 69} Therefore, no error occurred in this questioning, let alone plain error.
{¶ 70} The next alleged misconduct occurred during Officer Robinson's testimony. The testimony at issue is the same testimony discussed in the third assignment of error. Appellant alleged the state asked Officer Robinson's opinion about the ultimate legal issue of whether selling the Tahoe to the Village violated R.C. 2921.42(A)(1). As discussed under that assignment of error, the ultimate issue in this case is whether Appellant's actions employed the authority or used the influence of his office. The questions asked by the state were not whether Officer Robinson believed the acts committed by Appellant violated the statute. Rather, he was asked if he knew this statute existed, had *780 he ever dealt with this statute, and was it a crime to violate this statute. Tr. 345-346. Officer Robinson indicated he did not know about the statute, he had never dealt with it, and it is a crime to violate the statute. He did not offer an opinion on whether Appellant's conduct violated the statute. Therefore, this court concludes there was no prosecutorial misconduct as to this complained of conduct.
{¶ 71} The next alleged misconduct was the prosecutor failed to produce all of the 2013 Village minutes during discovery and testimony was permitted on the minutes not produced. This was raised in the fourth assignment of error. As discussed in that assignment of error, only two months of minutes from 2013 were given to Appellant. During the direct examination of the Assistant Auditor III, the state asked if all of the 2013 minutes were reproduced and was there any mention of a vote to acquire the Tahoe in those minutes. The witness testified they were reproduced, she reviewed them, and there was no mention of the vote on the Tahoe. Appellant did not object to that testimony. It was not until later when the minutes were mentioned again that Appellant objected. At that point the court ruled that before any questions could be asked about the minutes from the remaining months of 2013, the state would have to produce them and let Appellant and the court see them prior to asking questions about them. No questions were asked about the remaining months. Any error regarding these minutes does not constitute plain error. Appellant's defense was not affected by the failure to disclose the minutes; the minutes had nothing to do with the acquisition of the Tahoe or the Charger. Appellant's defense was that the Village did a poor job at record keeping and there was no evidence he used his position to sell the Tahoe to the Village. The Assistant Auditor III agreed the Village was very bad at keeping records; the records were not used to show Appellant exerted his authority to sell the Tahoe.
{¶ 72} The last alleged prosecutorial misconduct occurred during closing arguments. Appellant finds fault with the prosecutor stating that the Village obtained no benefit from purchasing the Tahoe from Appellant because it was financed. Appellant contends the only evidence presented at trial was that Appellant personally financed the Tahoe to the benefit of the Village. Appellant asserts the state misrepresented the evidence and prejudiced him. This alleged misrepresentation occurred in the following argument by the state:
Now, finally you will have to find that the treatment accorded to the Village of Smithfield was preferential or the same as that accorded to other customers.
Now, you saw that the NADA value of that vehicle for a clean trade-in was $12,000 and yes, there are checks presented and the last one that was provided by Deborah Coconougher was for the repayment of ammunition but you still have $12,500. So, that treatment is not any better or any worse than he would have given to somebody else. So, there was certainly no real benefit. Yes, the Village of Smithfield financed it.
And you know what's troubling about that though, Ladies and Gentlemen, they also received financing if you can recall from the Charger. You heard Christina Latynski testify that when she was trying to recreate the record, because the Village of Smithfield had been inauditable for so long, she had to go to C. Hackett and they did obtain the note and the financing agreement for the Charger. So, Counsel wanted to you [sic] believe during the course of this trial that they would never be able to get *781 financing but they did. They got financing on that Charger. Zero percent? Probably not. But yes they were able to get financing and they did that with Robert Mieczkowski too.
Now, you heard from a multiple - from multiple witnesses that the Village of Smithfield didn't pay their bills. They were behind with the Public Employees Retirement System. They were behind with the Ohio Department of Taxation. They were behind with the Internal Revenue Service. They were behind paying their water bills. But who were they not behind with? That man right there. He got paid his contract price and we know what the contract price was because he told you. You didn't have to infer anything from his statement, Ladies and Gentlemen, because it is all right there.
Tr. 636-637.
{¶ 73} Appellant contends this misrepresentation went to the heart of the third element of the statutory defense. The third element of the statutory defense set forth in R.C. 2921.42(C) is the treatment the political subdivision received was "either preferential to or the same as that accorded other customers or clients in similar transactions." R.C. 2921.42(C)(3). During closing arguments, the state did argue Appellant did not meet his burden on the affirmative defense. Tr. 634-637. The portion of the closing argument cited above does refer to the third element of the defense. However, the complained of statement was not a misrepresentation.
{¶ 74} At trial the title for the Tahoe was admitted into evidence and it indicated the Tahoe was sold for $12,000. Tr. 313; State's Exhibit 5. The accounting done of the Village's books indicated Appellant was paid either $12,500 or $12,000 for the Tahoe. Tr. 279, 415, 425. Not all payments to Appellant were designated as payments for the Tahoe. Tr. 283. Some checks contained a notation in the memo line that the payment was for the Tahoe, however others did not. Tr. 283. The insinuation at trial was that either there was an overpayment of $500 or the additional $500 was reimbursement for ammunition or something else Appellant bought for the Village. Tr. 279. Appellant's statement to the investigator was that he sold the Tahoe to the Village for $12,000; the Village paid him $3,000 as a down payment and $500 a month until it was paid in full. State's Exhibit 14. When asked about interest, he told the council or safety committee that he just needed to get the canine program up and going. State's Exhibit 14.
{¶ 75} Thus, the evidence appears to indicate the Village was not outwardly charged interest on the Tahoe loan. Appellant is of the opinion that this means the vehicle was not financed and the statement by the prosecutor that it was financed is a misstatement of the facts.
{¶ 76} Although Appellant may not have charged an interest fee, the vehicle was paid off in monthly payments because the Village could not afford to pay the entire purchase price at one time. This is a type of "financing." Furthermore, although a zero percent interest rate is a good deal for buyers, often times the interest is calculated in the purchase price. If a buyer is able to pay in full, usually the price of the vehicle is lowered. This is because of the risk taken in collecting monthly payments. As such, "financing" occurred. Accordingly, the prosecutor's statement was not a misstatement of the facts. The statement is merely an alternative way to look at zero percent interest rates.
{¶ 77} Furthermore, there was no evidence as to what the contract was for the Charger. It is unclear whether the Village made monthly payments on the Charger and whether it was charged interest as *782 part of a financing agreement. There also was no testimony indicating what deal the Village could get on another used vehicle similar to the Tahoe. Meaning, could the Village get a zero percent interest rate somewhere else for the same purchase price and a comparable vehicle? Although the Village was financially not sound there was no evidence to indicate any comparable vehicle would cost more with financing because of the Village's credit.
{¶ 78} Therefore, considering the above, the prosecutor was entitled to draw alternative inferences from the claim the vehicle was not financed:
Parties have wide latitude in their closing statements, particularly "latitude as to what the evidence has shown and what inferences can be drawn from the evidence." State v. Diar , 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, at ¶ 213. A prosecutor may state his opinion if it is based on the evidence presented at trial. Id. A prosecutor may not state his personal belief regarding the credibility of a witness. State v. Jackson , 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, at ¶ 117. However, a prosecutor may comment upon the testimony of witnesses and suggest the conclusions to be drawn. State v. Hand , 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, at ¶ 116. A prosecutor may even point out a lack of credibility of a witness, if the record supports such a claim. See State v. Powell , 177 Ohio App.3d 825, 2008-Ohio-4171, 896 N.E.2d 212, at ¶ 45.
State v. Wolff , 7th Dist. No. 07 MA 166, 2009-Ohio-7085, ¶ 13.
{¶ 79} Considering the entire closing argument, that statement did not deprive Appellant of a fair trial. It was an alternative view on zero percent interest and monthly payments. The statements did not undermine the defense because the deal offered was still a good deal and one that may have been better than the Village could have received. Furthermore, that was only one of the elements Appellant had to show to prove the affirmative defense. As will be discussed in the seventh and eighth assignments of error, Appellant failed to show both the second and fourth elements because there were no other used vehicle bids for the vehicle to be used by the canine unit.
{¶ 80} In conclusion, this assignment of error lacks merit.
Sixth Assignment of Error
"Appellant was deprived of effective assistance of counsel due to numerous errors and omissions which prejudiced Appellant's trial."
{¶ 81} To prove ineffective assistance of counsel, the defendant must satisfy a two-prong test; that counsel's performance has fallen below an objective standard of reasonable representation, and that he was prejudiced by counsel's performance. Strickland v. Washington , 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ; State v. Bradley , 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), at paragraph two of the syllabus. To demonstrate prejudice, the defendant must prove that, but for counsel's errors, the result of the trial would have been different. Id. paragraph three of the syllabus. In Ohio, a properly licensed attorney is presumed to be competent and the burden is on the defendant to prove otherwise. State v. Hamblin , 37 Ohio St.3d 153, 155, 524 N.E.2d 476 (1988).
{¶ 82} Appellant asserts three instances of ineffective assistance of counsel - 1) counsel failed to object during voir dire (fifth assignment of error), 2) counsel failed to object during closing arguments (fifth assignment of error), and 3) counsel failed to object to Assistant Auditor III's testimony when she indicated she reviewed all the minutes for 2013, but only 2 of *783 those minutes were allegedly provided during discovery (fourth assignment of error).
{¶ 83} These happenings were discussed in previous assignments of error and in each of those assignments of error any error did not rise to the level of plain error. The plain error standard of review was used because trial counsel did not lodge objections to the state's question or comments.
{¶ 84} The first two instances are discussed in the preceding assignment of error. As to voir dire, the Appellant did not object to state's questioning regarding whether the city employee believed an employee should enter into a contract with the government. Although reviewed under a plain error standard of review, the question was a permissible question. The prospective juror had been a government employee. Thus, the question was necessary to determine if the person could be fair and impartial given his prior employment. Furthermore, the question asked by the prosecutor was not whether the employee is permitted by law to enter into a contract with the government. Rather, the state asked if the employee should enter into a contract with the government. There is a distinction between those questions.
{¶ 85} Similarly, as to the statement made during closing argument, the prosecutor was allowed to draw inferences from the evidence during the closing statements. As explained above, the prosecutor's statement that the Tahoe was financed even though the Village received a zero percent interest rate, is one inference from the evidence since the Village made monthly payments, and did not pay for the vehicle in one lump sum. Consequently, the statement was not a misstatement of the facts warranting an objection and the granting of that objection. Furthermore, failing to object may have been a tactical decision:
"[A]s a matter of law, the failure to object to an error at trial may be justified as a trial tactic and thus does not sustain a claim of ineffective assistance of counsel." State v. Miller , 9th Dist. Summit No. 23240, 2007-Ohio-370 [2007 WL 257857], ¶ 10. Counsel might make this tactical decision, for instance, if "objecting would only serve to highlight negative testimony or run counter to defense counsel's theory of the case." State v. Bradford , 9th Dist. Summit No. 22441, 2005-Ohio-5804 [ 2005 WL 2861481], ¶ 27.
State v. Lawless , 9th Dist. No. 16AP0025, 2018-Ohio-444, 2018 WL 709069, ¶ 17.
{¶ 86} The third instance of claimed ineffective assistance of counsel occurred during the Assistant Auditor III's testimony about the minutes from 2013. Counsel did lodge an objection the second time there was reference to all of the minutes from 2013. The first time, however, counsel did not object. During that testimony the auditor indicated there was no indication in any of the minutes from 2013 that the purchase of the Tahoe was approved by the council. Although Appellant asserts he did not get to review all the minutes from 2013 and the trial transcripts appear to indicate that he did not, this statement by Auditor Latynski is consist with Appellant's theory at trial. The undisputed testimony indicates the only two places the Charger and/or the Tahoe were referenced were in the minutes that were provided to Appellant. All witnesses agreed the minutes kept by the Village were not adequate. Auditor Latynski testified because of the record keeping, the government could not perform a generally accepted government auditing standards (GASA) audit; they got permission to perform a non-GASA audit. Tr. 406. She also *784 testified that there were no contracts in the Village records regarding the purchase of either the Charger or the Tahoe, and none of the minutes included an authorization for the purchase of either vehicle. Tr. 412.
{¶ 87} Therefore, although Appellant did not review all the minutes, he was not prejudiced and it does not appear his defense would have been altered by review of the minutes. Counsel could have objected to the earlier testimony from Auditor Latynski. However, the failure to do so did not prejudice Appellant. There is no indication in the record how his defense would have changed had he seen all the minutes.
{¶ 88} Consequently, given the presumption of competency, counsel's performance did not fall below an objective standard of reasonable representation. Furthermore, given the evidence (as discussed in the next assignments of error) and the fact that there is no indication how his defense would have changed, Appellant was not prejudiced, meaning there is no indication the result of the trial would have been different.
{¶ 89} This assignment of error is meritless.
Seventh Assignment of Error
"The trial court erred when it entered the judgment of conviction in the absence of sufficient evidence to establish all the elements of the offenses charged in the indictment, contrary to the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution."
{¶ 90} The relevant inquiry on review of the sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis sic.) Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). '"Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins , 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 544 (1997), citing Black's Law Dictionary 1433 (6 Ed.1990). A determination as to whether the evidence is legally sufficient to sustain a verdict is a question of law. Thompkins at 386, 678 N.E.2d 541.
{¶ 91} Appellant was charged with violating R.C. 2921.42(A)(1), which provides:
(A) No public official shall knowingly do any of the following:
(1) Authorize, or employ the authority or influence of the public official's office to secure authorization of any public contract in which the public official, a member of the public official's family, or any of the public official's business associates has an interest;
R.C. 2921.42.
{¶ 92} Appellant asserts the state failed to offer evidence on four of the elements. He contends the state did not produce evidence he was a public official; did not produce evidence the Village was located in Jefferson County, Ohio; did not produce evidence the alleged crime happened during the time period set forth in the indictment; and did not produce evidence Appellant acted knowingly in employing authority or influence of his public office to secure the contract.
{¶ 93} Being a public official is an element of the offense. R.C. 2921.01(A) defines a public official as, "any elected or appointed officer, or employee, or agent of the state or any political subdivision, whether in a temporary or permanent capacity, and includes, but is not limited to, legislators, judges, and law enforcement *785 officers." This was the same definition used in the jury instruction.
{¶ 94} Testimony at trial indicated Appellant was a public officer. The Clerk for the Village of Smithfield, Deborah Coconougher, referred to Appellant as Chief Mieczkowski; she indicated the Village purchased a Tahoe from him. Tr. 263-265. She stated she notarized Robert Mieczkowski's signature on April 29, 2013 when he signed the title of the Tahoe to transfer it to the Village. Tr. 268. Officer Casey Robinson, who worked for the Village when the Tahoe was acquired, referred to Appellant as Chief Mieczkowski. Tr. 327. He indicated it was Appellant's job to present the prices of the cruisers to council. Tr. 327. Officer Robinson's testimony also indicated Appellant was the head of the police department. Tr. 344. A councilman who was on council when the Tahoe was acquired said to the best of his recollection it was Chief Mieczkowski who presented the Tahoe to council. Tr. 381. Investigator Chris Rudy with the Auditor of the State testified he interviewed Chief Mieczkowski about the Tahoe and the interview was recorded. Tr. 450, 453. When the interview was played for the jury, Appellant stipulated it was his voice on the recording. Tr. 456. Furthermore, during Appellant's case, the 2013 mayor of Smithfield testified that he was Appellant's supervisor when he was mayor of the Village. Tr. 525.
{¶ 95} This testimony taken together established Appellant was the Chief of Police for the Village of Smithfield. The testimony does not indicate if he was elected or appointed, but at the minimum it can be concluded he was an employee of the Village and a law enforcement officer. Consequently, he was a public official for purposes of the statutory definition.
{¶ 96} The second element allegedly not proven was venue. Appellant did not raise venue to the trial court. Venue is not a material element of the offense, and thus, it can be waived in the trial court by failing to object. State v. Jackson , 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, ¶ 142-143. Therefore, Appellant waived all but plain error.
{¶ 97} Article I, Section 10 of the Ohio Constitution and R.C. 2901.12 require that "evidence of proper venue must be presented in order to sustain a conviction for an offense." State v. Hampton , 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 20. "It is not essential that the venue of the crime be proven in express terms, provided it be established by all the facts and circumstances in the case, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the indictment." Id. , ¶ 19, quoting State v. Dickerson , 77 Ohio St. 34, 82 N.E. 969 (1907), paragraph one of the syllabus. Circumstantial evidence may be used to establish venue. State v. Poppelriter , 7th Dist., 2015-Ohio-4822, 50 N.E.3d 270, ¶ 22 (venue was properly raised to the trial court).
{¶ 98} In Poppelriter , this court's analysis includes case reviews where we had previously found circumstantial evidence established venue:
This court has found sufficient evidence of venue in cases where the county and state were not specifically named. See, e.g., State v. Brown , 7th Dist. No. 03MA32, 2005-Ohio-2939, 2005 WL 1385715 ; State v. Combs , 7th Dist. No. 97JE65, 1999 WL 1029518 (Nov. 15, 1999) ; State v. Shuttlesworth , 104 Ohio App.3d 281, 286-287, 661 N.E.2d 817 (7th Dist.1995). In Shuttlesworth , venue in Harrison County was found proper where there was testimony as to the parking lot of a named business on a certain street, an officer on duty for Cadiz responded, and the location was *786 said to be near the Cadiz Fire Department. Shuttlesworth , 104 Ohio App.3d at 286-287, 661 N.E.2d 817.
In Combs , we found sufficient evidence of venue in Jefferson County where an address in Steubenville was provided but there was no evidence as to the county or state. Combs , 7th Dist. No. 97JE65. In our Brown case, we found sufficient circumstantial evidence of venue in Mahoning County where testimony showed the offense took place in trees that could be seen from the defendant's house on Market Street and where Youngstown police went to defendant's house to arrest him. Brown , 7th Dist. No. 03MA32 at ¶ 79.
Id. at ¶ 17-18.
{¶ 99} The case at hand is comparable to those cases. In this case, a prior councilman testified the Village of Smithfield owed Jefferson County thousands of dollars for water payments. Tr. 371. The Clerk for the Village of Smithfield, Deborah Coconougher, stated she notarized Robert Mieczkowski's signature on April 29, 2013 when he signed the title of the Tahoe to transfer it to the Village. Tr. 268. The title was not recorded until March 3, 2015 and it was recorded in Harrison County. State's Exhibit 5. However, the title indicates the resident county of the Village of Smithfield is Jefferson County. State's Exhibit 5. Assistant Auditor Latynski testified she works for the State of Ohio and performs financial audits for governmental entities in her assigned region. Tr. 403-404. She testified she works mainly in Jefferson County and she was assigned to audit the Village of Smithfield. Tr. 404. The mayor from 2013 testified the Village was in debt to the Ohio Public Employees Retirement System, the Ohio Department of Taxation, and the Jefferson County Water District. Tr. 517. He further testified that the Village meetings are held in the Village building, which included the police station. Tr. 511. Therefore, although there was no direct testimony that the Village of Smithfield is located in Jefferson County, Ohio and the recommendation and vote for the Tahoe occurred there, the above is circumstantial evidence of venue, and sufficient evidence of venue. No error, let alone plain error, occurred regarding venue.
{¶ 100} Thirdly, Appellant argues there was no sufficient evidence to show the crime occurred within the period of time set forth in the indictment, which was April 2013 through October 2014. Appellant asserts the title was not recorded until March 3, 2015 and that is the only evidence of when the crime occurred.
{¶ 101} It is true the title was not recorded until March 3, 2015. However, the evidence indicates the recommendation for the purchase of the Tahoe occurred during the time period set forth in the indictment. Only the March 2013 and June 2013 minutes mentioned police vehicles; the rest of the minutes from 2013 were devoid of any mention of the Tahoe or Charger. Tr. 412, 419. The March 2013 minutes indicated there was a need for a new police cruiser. State's Exhibit 1. Officer Robinson confirmed that the cruisers were in deplorable condition and the Village was looking to buy new cruisers. Tr. 326-327. In the June 2013 minutes there is a statement that the Village needs to issue a check for the balance of equipping the Tahoe and Charger. State's Exhibit 2. Coconougher, the Clerk for the Village of Smithfield, stated she notarized Robert Mieczkowski's signature on April 29, 2013 when he signed the title of the Tahoe to transfer it to the Village. Tr. 268; State's Exhibit 5. The title indicates the Tahoe was delivered to the Village on April 29, 2013. State's Exhibit 5. Appellant's own statement indicates he received $3,000 as a down payment for the vehicle and $500 a month until it was paid *787 off. State's Exhibit 3 is a copy of a cashier's check from the Village to Appellant for $3,000 dated April 29, 2013. State's Exhibit 4 is copies of numerous checks to Appellant from the Village dating from May 17, 2013 to October 23, 2014. The majority of these checks indicate on the memo line that the payment is for the Tahoe. State's Exhibit 4. This evidence, taken together, indicates the recommendation and purchase of the Tahoe occurred sometime after March 2013, but before June 2013, and the payments occurred from April 29, 2013 through October 2014.
{¶ 102} Lastly, Appellant asserts the state did not produce any evidence he acted knowingly in authorizing or employing the authority or influence of his office to secure the contract to sell his Tahoe to the Village. The focus of Appellant's argument is on the word "knowingly."
{¶ 103} "Knowingly" is the mens rea and is defined statutorily as:
A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.
R.C. 2901.22(B).
{¶ 104} To act knowingly does not mean Appellant had to know his act violated R.C. 2921.42(A). The common-law maxim is that ignorance of the law is no excuse. Einhorn v. Ford Motor Co. , 48 Ohio St.3d 27, 30, 548 N.E.2d 933 (1990). To act knowingly means he intentionally did an act that violates the law; he does not have to know his conduct violates the law. See Brogley v. Everybody Fitness, L.L.C. , 2d Dist. No. 26453, 2015-Ohio-1395, 2015 WL 1600306, ¶ 35 (discussing CSPA violations and attorney fees).
{¶ 105} There is evidence Appellant acted knowingly. His own statement indicated he told either the safety committee or the Village council that rather than get one cruiser, they should purchase something at a decent price and then get another vehicle for a canine unit. State's Exhibit 14. He then negotiated a price of $25,000 for the 2010 Charger. State's Exhibit 14. He told the safety committee he could acquire a 4-wheel-drive vehicle that would not cost them a lot of money. State's Exhibit 14. One councilperson testified he believed Appellant presented the Tahoe to the council for purchase. Tr. 380-382. Thus, he did act knowingly in recommending the Tahoe to the council. The state asserts since Appellant was chief of police, he was in the best position to know what type of cruiser the Village needed and he knew his recommendation and negotiation of the contract would likely result in the Village entering into a contract for the purchase of the vehicle. Therefore, according to the state Appellant acted knowingly. Given the testimony, the state's reasoning is a rational inference of the evidence when the evidence is viewed in the light most favorable to the prosecution. See State v. Sykes , 7th Dist. No. 16 MA 0162, 2018-Ohio-983, 2018 WL 1342274, ¶ 13 ("In viewing a sufficiency of the evidence argument, the evidence and all rational inferences are evaluated in the light most favorable to the prosecution.").
{¶ 106} All four arguments set forth by Appellant are meritless. The state produced sufficient evidence of the elements of the offense for the case to be decided by *788 the jury. This assignment of error is overruled.
Eighth Assignment of Error
"Appellant's conviction was against the manifest weight of the evidence, contrary to the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution."
{¶ 107} Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." Thompkins , 78 Ohio St.3d at 387, 678 N.E.2d 541 (it depends on the effect of the evidence in inducing belief but is not a question of mathematics). " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " State v. Lang , 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, citing Thompkins at 387, 678 N.E.2d 541, quoting State v. Martin , 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).
{¶ 108} Appellant asserts the greater amount of credible evidence supports the conclusion he was not guilty of R.C. 2921.42(A)(1). He contends the greater weight of the evidence indicates the elements of the offense were not proven beyond a reasonable doubt. He also argues he proved all the elements of the statutory defense as set forth in R.C. 2921.42(C).
{¶ 109} As to the elements of R.C. 2921.42(A)(1), Appellant argues the greater amount of evidence indicates he did not use his influence to sell the Tahoe to the Village. A review of the evidence demonstrates there was conflicting testimony as to whether or not it was Appellant who mentioned the Tahoe to the Village council or safety committee. Village councilman Allen Slaughter testified he does not remember who presented it to the council. Tr. 366. Ted Boyd, the mayor of Smithfield in 2013, testified Officer Robinson presented the Tahoe to the council. Tr. 511. Officer Robinson testified he does not remember recommending the Tahoe to the council, but he did remember that Appellant presented it to the safety committee. Tr. 334, 344. Officer Robinson indicated it would have been Appellant's job to make the recommendation to council. Tr. 334. Councilman Ed Sobolewski testified he was not certain who recommended the Tahoe to the council, but it probably was Appellant. Tr. 381. Appellant's own statement indicates he was the person who mentioned the Tahoe to the safety committee. State's Exhibit 14. His statement indicates he wanted the Village to buy two cars, a cruiser and a canine unit, and he was the one to suggest paying less for the cruiser so that a canine unit could be purchased. State's Exhibit 14.
{¶ 110} The testimony, however, is uncontroverted that Appellant did not explicitly try to exert the authority of his position to obtain the contract. Village councilman Allen Slaughter testified Appellant had no power to authorize the purchase of the Tahoe and he testified Appellant did not influence his decision on the Tahoe. Tr. 369. Village councilman Sobolewski also stated that Appellant did not vote on the Tahoe and Appellant did not influence his vote. Tr. 385, 402. Boyd, the previous mayor, testified Appellant had no role in the vote on the Tahoe and he never witnessed Appellant discussing the purchase of the Tahoe with any member *789 of council in a one-on-one forum or trying to strong-arm any member of council to vote on the purchase of the Tahoe. Tr. 513-514.
{¶ 111} That testimony, however, does not mean Appellant did not use his authority to secure the contract. The state focuses on Appellant's recommendation of the Tahoe to the Village and the fact that he told the Village the Tahoe was his sister's. Appellant contends he did not recommend the Tahoe, he just said he knew of a vehicle. He also asserts that whether or not the Tahoe was his or his sister's does not matter.
{¶ 112} Appellant is correct in that the evidence does not indicate Appellant stated he recommended the Tahoe. However, the Tahoe was the only vehicle presented for purchase as the canine unit. As discussed in the second assignment of error, a recommendation could be an exertion of authority to obtain the contract when there are two or more choices and the public official recommends one of the choices or indicates one choice is the best choice. When only one choice is presented it is an implicit recommendation; it is using ones authority to not present any other options. Therefore, while presenting the vehicle to council may not have been accompanied by a formal recommendation, when it was the only one presented it was an implicit recommendation. And, it could be seen as a violation of the statute at issue. The jury may not have agreed with Appellant's contention that he did not recommend the vehicle considering the facts of the case.
{¶ 113} As to who the vehicle belonged to, the uncontroverted testimony does indicate that councilpersons believed the Tahoe was Appellant's sister's vehicle when the agreement was entered. Pursuant to the R.C. 2921.42(A)(1) if Appellant used his authority to obtain the contract, it does not matter if the vehicle belonged to him or his sister; the statute indicates a public official cannot exert his authority to obtain a public contract for a family member. The Ohio Ethics Commission has stated that family members include siblings. Ohio Ethics Commission Advisory Opinion 96-003 (June 19, 1998), citing Ohio Ethics Commission Advisory Opinions Nos. 80-001, 90-010, 92-012, and 97-004. Therefore, Appellant is partially correct that who it belonged to does not matter for purposes of violating the statute.
{¶ 114} However, Appellant may be failing to realize the impact this information could have had on the jury. The information regarding who owned the vehicle could have had an impact on the jury's assessment of Appellant's credibility. Although Appellant did not testify, he called a witness who explained that the family often does family transfers and this Tahoe was his sister's, even though it was in Appellant's name. Tr. 533. It was explained this Tahoe was his sisters, but he transferred his wife's Tahoe to his nephew and his sister's Tahoe was transferred to him for purposes of selling. Tr. 531-533. Although an explanation was given for why Appellant stated it was his sister's Tahoe, the failure to be fully forthright on whose name was on the title may have had an impact on the jury.
{¶ 115} This is a difficult case for manifest weight. There was no outward exertion of Appellant's position. One plausible view of the evidence is Appellant did not exert his authority. However, given that there was only one option, even though there were no strong arm tactics or formal lobbying, the use of one option could be seen as the exertion of authority of his position. The other plausible view of the evidence is Appellant did exert his authority.
{¶ 116} Since there are two potentially plausible views of the evidence, it is a *790 credibility question best left to the trier of fact. State v. Riley , 7th Dist. No. 13 MA 180, 2015-Ohio-94, 2015 WL 178404, ¶ 31, citing Seasons Coal Co., Inc. v. Cleveland , 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). The fact that Appellant was not completely forthright about whose name was on the title to the Tahoe may have affected Appellant's credibility. Reversal based upon the manifest weight of the evidence should occur "only in the exceptional case in which the evidence weighs heavily against conviction." Thompkins , 78 Ohio St.3d at 387, 678 N.E.2d 541, citing Martin , 20 Ohio App.3d at 175, 485 N.E.2d 717. Given the evidence, the weight of the evidence does not clearly indicate the jury lost its way; a reasonable jury could find he did use his position when he only offered one choice. Accordingly, we hold the verdict as to the elements of R.C. 2921.42(A) was not against the manifest weight of the evidence.
{¶ 117} The next part of Appellant's argument is about the statutory defense. The jury was instructed on the statutory defense and Appellant argued the statutory defense elements were met. The statutory defense provides:
(C) This section does not apply to a public contract in which a public official, member of a public official's family, or one of a public official's business associates has an interest, when all of the following apply:
(1) The subject of the public contract is necessary supplies or services for the political subdivision or governmental agency or instrumentality involved;
(2) The supplies or services are unobtainable elsewhere for the same or lower cost, or are being furnished to the political subdivision or governmental agency or instrumentality as part of a continuing course of dealing established prior to the public official's becoming associated with the political subdivision or governmental agency or instrumentality involved;
(3) The treatment accorded the political subdivision or governmental agency or instrumentality is either preferential to or the same as that accorded other customers or clients in similar transactions;
(4) The entire transaction is conducted at arm's length, with full knowledge by the political subdivision or governmental agency or instrumentality involved, of the interest of the public official, member of the public official's family, or business associate, and the public official takes no part in the deliberations or decision of the political subdivision or governmental agency or instrumentality with respect to the public contract.
R.C. 2921.42(C).
{¶ 118} Appellant met the first element. It is undisputed that the Village's cruisers were in major disrepair. Tr. 326.
{¶ 119} The second element is a comparable vehicle was unobtainable elsewhere at the same or lower cost. Appellant did not satisfy this element. There was no evidence of what deal the Village could have gotten on a comparable vehicle from someone else. Appellant did argue with the Village's finances it could not have gotten zero percent financing anywhere else. However, there was no evidence produced to indicate that assertion was accurate.
{¶ 120} Admittedly, an inference could have been drawn from the testimony about the Village's financial status. The Village was, in polite terms, financially unsound and it was undisputed the Village owed a great deal of money in unpaid bills; it owed thousands of dollars to Jefferson County for its water bill, it owed money to the Ohio Department of Taxation, and it owed money to PERS. One could possibly conclude *791 the Village would not be able to get the same deal somewhere else.
{¶ 121} The third element is the political subdivision or governmental agency received treatment either preferential to or the same as that accorded other customers or clients in similar transactions. Many of the arguments as to how Appellant demonstrated this element or did not demonstrate this element are the same as those set forth for the second element. There was no evidence indicating Appellant presented the Village with the purchase price for a comparable vehicle and no evidence from another source that it could not have offered a comparable vehicle to the Village for the same or better terms.
{¶ 122} The fourth element is that the transaction was conducted at arm's length with full knowledge of the public official or his family member's interest and the public official did not deliberate or take part in deciding whether the political subdivision or governmental agency would enter into the public contract. In this instance, Appellant indicated the vehicle was his sister's. This was not a completely accurate statement because his name was on the title. Regardless, either interest had to be disclosed to the Village pursuant to the language of the statute. The testimony is uncontroverted that Appellant did not explicitly try to exert the authority of his position to obtain the contract. Tr. 369, 385, 402, 513-514. However, as aforementioned, given that only one choice was presented to the Village it can be concluded Appellant did implicitly take part in deciding whether the Village would enter into the contract.
{¶ 123} Considering the evidence and all possible inferences, we cannot conclude that a manifest miscarriage of justice has occurred in this case. The jury's determination that Appellant did not prove the statutory defense is not against the manifest weight of the evidence.
{¶ 124} Considering all the above, this assignment of error lacks merit.
Conclusion
{¶ 125} All assignments of error are meritless. The conviction is affirmed.
Donofrio, J. concurs.
Waite, J. concurs.